Justice Sotomayor
delivered the opinion of the Court.†
The Torture Victim Protection Act of 1991 (TVPA or Act), 106 Stat. 73, note following 28 U. S. C. § 1350, authorizes a cause of action against “[a]n individual” for acts of torture and extrajudicial killing committed under authority or color of law of any foreign nation. We hold that the term “individual” as used in the Act encompasses only natural per *452 sons. Consequently, the Act does not impose liability against organizations.
I
Because this case arises from a motion to dismiss, we accept as true the allegations of the complaint. Ashcroft v. al-Kidd, 563 U. S. 731, 734 (2011). Petitioners are the relatives of Azzam Rahim, who immigrated to the United States in the 1970⅛ and became a naturalized citizen. In 1995, while on a visit to the West Bank, Rahim was arrested by Palestinian Authority intelligence officers. He was taken to a prison in Jericho, where he was imprisoned, tortured, and ultimately killed. The following year, the U. S. Department of State issued a report concluding that Rahim “died in the custody of [Palestinian Authority] intelligence officers in Jericho.” Dept, of State, Country Reports on Human Rights Practices for 1995, Submitted to the House Committee on International Relations and the Senate Committee on Foreign Relations, 104th Cong., 2d Sess., 1183 (Joint Committee Print 1996).
In 2005', petitioners filed this action against respondents, the Palestinian Authority and the Palestine Liberation Organization, asserting, inter alia, claims of torture and extrajudicial killing under the TVPA. The District Court granted respondents’ motion to dismiss, concluding, as relevant, that the Act’s authorization of suit against “[ajn individual” extended liability only to natural persons. Mohamad v. Rajoub, 664 F. Supp. 2d 20, 22 (DC 2009). The United States Court of Appeals for the District of Columbia Circuit affirmed on the same ground. See Mohamad v. Rajoub, 634 F. 3d 604, 608 (2011) (“Congress used the word ‘individual’ to denote only natural persons”).[1] We granted certiorari, 565 U. S. 962 (2011), to resolve a split among the Circuits *453 with respect to whether the TVPA authorizes actions against defendants that are not natural persons,[2] and now affirm.
II
The TVPA imposes liability on individuals for certain acts of torture and extrajudicial killing. The Act provides:
“An individual who, under actual or apparent authority, or color of law, of any foreign nation—
“(1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or
“(2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual’s legal representative, or to any person who may be a claimant in an action for wrongful death.” §2(a).
The Act defines “torture” and “extrajudicial killing,” §3, and imposes a statute of limitations and an exhaustion requirement, §§ 2(b), (c). It does not define “individual.”
Petitioners concede that foreign states may not be sued under the Act — namely, that the Act does not create an exception to the Foreign Sovereign Immunities Act of 1976, 28 U. S. C. § 1602 et seq., which renders foreign sovereigns largely immune from suits in U. S. courts. They argue, however, that the TVPA does not similarly restrict liability against other juridical entities. In petitioners’ view, by permitting suit against “[a]n individual,” the TVPA contemplates liability against natural persons and nonsovereign organizations (a category that, petitioners assert, includes respondents). We decline to read “individual” so unnaturally. The ordinary meaning of the word, fortified by its *454 statutory context, persuades us that the Act authorizes suit against natural persons alone.
A
Because the TVPA does not define the term “individual,” we look first to the word’s ordinary meaning. See FCC v. AT&T Inc., 562 U. S. 397, 403 (2011) (‘"When a statute does not define a term, we typically give the phrase its ordinary meaning” (internal quotation marks omitted)). As a noun, “individual” ordinarily means “[a] human being, a person.” 7 Oxford English Dictionary 880 (2d ed. 1989); see also, e. g., Random House Dictionary of the English Language 974 (2d ed. 1987) (“a person”); Webster’s Third New International Dictionary 1152 (1986) (hereinafter Webster’s) (“a particular person”). After all, that is how we use the word in everyday parlance. We say “the individual went to the store,” “the individual left the room,” and “the individual took the car,” each time referring unmistakably to a natural person. And no one, we hazard to guess, refers in normal parlance to an organization as an “individual.” Evidencing that common usage, this Court routinely uses “individual” to denote a natural person, and in particular to distinguish between a natural person and a corporation. See, e. g., Goodyear Dunlop Tires Operations, S. A, v. Brown, 564 U. S. 915, 924 (2011) (“For an individual, the paradigm forum for the exercise of general jurisdiction is the individual’s domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home”).
Congress does not, in the ordinary course, employ the word any differently. The Dictionary Act instructs that “[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the wor[d] ‘person’ . . . included] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals.” 1 U. S. C. § 1 (emphasis added). With the phrase “as well as,” the definition marks “individual” as distinct from the list of artificial entities that precedes it.
*455 In a like manner, federal statutes routinely distinguish between an “individual” and an organizational entity of some kind. See, e. g., 7 U. S. C. § 92(k) (“ ‘Person’ includes partnerships, associations, and corporations, as well as individuals”); § 511 (same); 15 U. S. C. § 717a (“‘Person’ includes an individual or a corporation”); 16 U. S. C. § 796(4) (“ ‘[P]erson’ means an individual or a corporation”); 8 U. S. C. § 1101(b)(3) (“‘[Pierson’ means an individual or an organization”). Indeed, the very same Congress that enacted the TVPA also established a cause of action for U. S. nationals injured “by reason of an act of international terrorism” and defined “person” as it appears in the statute to include “any individual or entity capable of holding a legal or beneficial interest in property.” Federal Courts Administration Act of 1992, 18 U. S. C. §§ 2333(a), 2331(3) (emphasis added).
B
This is not to say that the word “individual” invariably means “natural person” when used in a statute. Congress remains free, as always, to give the word a broader or different meaning.- But before we will assume it has done so, there must be some indication Congress intended such a result. Perhaps it is the rare statute (petitioners point to only one such example, located in the Internal Revenue Code) in which Congress expressly defines “individual” to include corporate entities. See 26 U. S. C. § 542(a)(2). Or perhaps, as was the case in Clinton v. City of New York, 524 U. S. 417, 429 (1998), the statutory context makes that intention clear, because any other reading of “individual” would lead to an “‘absurd’” result Congress could not plausibly have intended.
There are no such indications in the TVPA. As noted, the Act does not define “individual,” much less do so in a manner that extends the term beyond its ordinary usage. And the statutory context strengthens — not undermines — the conclusion that Congress intended to create a cause of action against natural persons alone. The Act’s liability provision *456 uses the word “individual” five times in the same sentence: once to refer to the perpetrator (i. e,, the defendant) and four times to refer to the victim. See § 2(a). Only a natural person can be a victim of torture or extrajudicial killing. “Since there is a presumption that a given term is used to mean the same thing throughout a statute, a presumption surely at its most vigorous when a term is repeated within a given sentence,” Brown v. Gardner, 513 U. S. 115, 118 (1994) (citation omitted), it is difficult indeed to conclude that Congress employed the term “individual” four times in one sentence to refer to a natural person and once to refer to a natural person and any nonsovereign organization. See also § 3(b)(1) (using term “individual” six times in referring to victims of torture).
It' is also revealing that the Act holds perpetrators liable for extrajudicial killing to “any person who may be a claimant in an action for wrongful death.” § 2(a)(2) (emphasis added). “Person,” we have recognized, often has a broader meaning in the law than “individual,” see Clinton, 524 U. S., at 428, n. 13, and frequently includes nonnatural persons, see, e. g., 1 U. S. C. § 1. We generally seek to respect Congress’ decision to use different terms to describe different categories of people or things. See Sosa v. Alvarez-Machain, 542 U. S. 692, 711, n. 9 (2004). Our construction of “individual” to encompass solely natural persons credits Congress’ use of the disparate terms; petitioners’ construction does not.[3]
In sum, the text of the statute persuades us that the Act authorizes liability solely against natural persons.
f — H ⅜ — l
Petitioners’ counterarguments are unpersuasive.
*457 A
Petitioners first dispute that the plain text of the TVPA requires today’s result. Although they concede that an ordinary meaning of “individual” is “human being,” petitioners point to definitions of “individual” that “frame the term . . . in distinctly non-human terms, instead placing their emphases on the oneness of something.” Brief for Petitioners 18 (citing, e. g., Webster’s 1152 (defining “individual” as “a single or particular being or thing or group of being or things”)). Those definitions, however, do not account even for petitioners’ preferred interpretation of “individual”- in the Act, for foreign states — which petitioners concede are not liable under the Act — do not differ from nonsovereign organizations in their degree of “oneness.” Moreover, “[w]ords that can have more than one meaning are given content . . . by their surroundings,” Whitman v. American Trucking Assns., Inc., 531 U. S. 457, 466 (2001), and for the reasons explained supra, petitioners’ definition makes for an awkward fit in the context of the TVPA.
Petitioners next claim that federal tort statutes uniformly provide for liability against organizations, a convention they maintain is common to the legal systems of other nations. We are not convinced, however, that any such “domestic and international presumption of organizational liability” in tort actions overcomes the ordinary meaning of “individual.” Brief for Petitioners 16. It is true that “Congress is understood to legislate against a background of common-law adjudicatory principles.” Astoria Fed. Sav. & Loan Assn. v. Solimino, 501 U. S. 104, 108 (1991). But Congress plainly can override those principles, see, e. g., id., at 108-109, and, as explained supra, the TVPA’s text evinces a clear intent not to subject nonsovereign organizations to liability.[4]
*458 We also decline petitioners’ suggestion to construe the TVPA’s scope of liability to conform with other federal statutes that petitioners contend provide civil remedies to victims of torture or extrajudicial killing. None of the three statutes petitioners identify employs the term “individual” to describe the covered defendant, and so none assists in the interpretive task we face today. See 42 U. S. C. § 1983; 28 U. S. C. § 1603(a) (2006 ed.), § 1605A(c) (2006 ed., Supp. IV); 18 U. S. C. §§2333, 2334(a)-(b), 2337. The same is true of the Alien Tort Statute, 28 U. S. C. § 1350, so it offers no comparative value here regardless of whether corporate entities can be held liable in a federal common-law action brought under that statute. Compare Doe v. Exxon Mobil Corp., 654 F. 3d 11 (CADC 2011), with Kiobel v. Royal Dutch Petroleum Co., 621 F. 3d 111 (CA2 2010), cert. granted, 565 U. S. 961 (2011). Finally, although petitioners rightly note that the TVPA contemplates liability against officers who do not personally execute the torture or extrajudicial killing, see, e. g., Chavez v. Carranza, 559 F. 3d 486 (CA6 2009), it does not follow (as petitioners argue) that the Act embraces liability against nonsovereign organizations. An officer who gives an order to torture or kill is an “individual” in that word’s ordinary usage; an organization is not.
B
Petitioners also contend that legislative history supports their broad reading of “individual.” But “reliance on legislative history is unnecessary in light of the statute’s unambiguous language.” Milavetz, Gallop & Milavetz, P. A. v. *459 United States, 559 U. S. 229, 236, n. 3 (2010). In any event, the excerpts petitioners cite do not help their cause. Petitioners note that the Senate Report states that “[t]he legislation uses the term ‘individual’ to make crystal clear that foreign states or their entities cannot be sued under this bill under any circumstances.” S. Rep. No. 102-249, p. 7 (1991) (S. Rep.); see also H. R. Rep. No. 102-367, pt. 1, p. 4 (1991) (“Only ‘individuals,’ not foreign states, can be sued”). Yet that statement, while clarifying that the Act does not encompass liability against foreign states, says nothing about liability against nonsovereign organizations. The other excerpts petitioners cite likewise are not probative of the meaning of “individual,” for they signal only that the Act does not impose liability on perpetrators who act without authority or color of law of a foreign state. See, e. g., id., at 5 (“The bill does not attempt to deal with torture or killing by purely private groups”); S. Rep., at 8 (The bill “does not cover purely private criminal acts by individuals or nongovernmental organizations”).
Indeed, although we need not rely on legislative history given the text’s clarity, we note that the history only supports our interpretation of “individual.” The version of the TVPA that was introduced in the 100th Congress established liability against a “person.” Hearing and Markup on H. R. .1417 before the House Committee on Foreign Affairs and Its Subcommittee on Human Rights and International Organizations, 100th Cong., 2d Sess., 82 (1988). During the markup session of the House Foreign Affairs Committee, one of the bill’s sponsors proposed an amendment “to make it clear we are applying it to individuals and not to corporations.” Id., at 81, 87. Counsel explained that it was a “fairly simple” matter “of changing the word, ‘person’ to ‘individuals’ in several places in the bill.” Id., at 87-88. The amendment was unanimously adopted, and the version of the bill reported out of Committee reflected the change. Id., at 88; H. R. Rep. *460 No. 100-693, pt. 1, p. 1 (1988). A materially identical version of the bill was enacted as the TVPA by the 102d Congress. Although we are cognizant of the limitations of this drafting history, cf. Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U. S. 546, 568 (2005), we nevertheless find it telling that the sole explanation for substituting “individual” for “person” confirms what we have concluded from the text alone.
C
Petitioners' final argument is that the Act would be rendered toothless by a construction of “individual” that limits liability to natural persons. They contend that precluding organizational liability may foreclose effective remedies for victims and their relatives for any number of reasons. Victims may be unable to identify the men and women who subjected them to torture, all the while knowing the organization for whom they work. Personal jurisdiction may be more easily established over corporate than human beings. And natural persons may be more likely than organizations to be judgment proof. Indeed, we are told that only two TVPA’ plaintiffs have been able to recover successfully against a natural person — one only after the defendant won the state lottery. See Jean v. Dorélien, 431 F. 3d 776, 778 (CA11 2005).
We acknowledge petitioners’ concerns about the limitations on recovery. But they are ones that Congress imposed and that we must respect. “[N]o legislation pursues its purposes at all costs,” Rodriguez v. United States, 480 U. S. 522, 525-526 (1987) (per curiam), and petitioners’ purposive argument simply cannot overcome the force of the plain text. We add only that Congress appeared well aware of the limited nature of the cause of action it established in the Act. See, e. g., 138 Cong. Rec. 4177 (1992) (remarks of Sen. Simpson) (noting that “as a practical matter, this legislation will result in a very small number of cases”); 137 Cong. Rec. 2671 (1991) (remarks of Sen. Specter) (“Let me emphasize that *461 the bill is a limited measure. It is estimated that only a few of these lawsuits will ever be brought”).
* * *
The text of the TVPA convinces us that Congress did not extend liability to organizations, sovereign or not. There are no doubt valid arguments for such an extension. But Congress has seen fit to proceed in more modest steps in the Act, and it is not the province of this branch to do otherwise. The judgment of the United States Court of Appeals for the District of Columbia Circuit is affirmed.

It is so ordered.

Justice Scalia joins this opinion except as to Part III-B.

 Respondents also argued before the District Court that the TVPA’s requirement that acts be committed under authority or color of law of a foreign nation was not met. Neither the District Court nor Court of Appeals addressed the argument, and we offer no opinion on its merits.

 Compare Aziz v. Alcolac, Inc., 658 F. 3d 388 (CA4 2011) (TVPA excludes corporate defendants from liability); Mohamad v. Rajoub, 634 F. 3d 604 (CADC 2011) (TVPA liability limited to natural persons); Bowoto v. Chevron Corp., 621 F. 3d 1116 (CA9 2010) (same as Aziz), with Sinaltrainal v. Coca-Cola Co., 578 F. 3d 1252, 1264, n. 13 (CA11 2009) (TVPA liability extends to corporate defendants).

 The parties debate whether estates, or other nonnatural persons, in fact may be claimants in a wrongful-death action. We think the debate largely immaterial. Regardless of whether jurisdictions today allow for such actions, Congress’ use of the broader term evidences an intent to accommodate that possibility.

 Petitioners’ separate contention that the TVPA must be construed in light of international agreements prohibiting torture and extrajudicial killing fails for similar reasons. Whatever the scope of those agreements, the TVPA does not define “individual” by reference to them, and principles *458 they elucidate cannot overcome the statute’s text. The same is true of petitioners’ suggestion that Congress in the TVPA imported a “specialized usage” of the word “individual” in international law. See Brief for Petitioners 6. There is no indication in the text of the statute or legislative history that Congress knew of any such specialized usage of the term, much less intended to import it into the Act.