WILKINSON, Circuit Judge,
dissenting:
While there is much in the majority’s thoughtful opinion with which I agree, I cannot approve the bankruptcy court’s decision to break a debtor’s children into fractions for purposes of Chapter 13’s means test. That approach contravenes statutory text, allows judges to unilaterally update the Bankruptcy Code, and subjects debtors to needlessly intrusive and litigious proceedings. Because I do not believe the bankruptcy court adopted a permissible interpretation of the statutory provisions at issue, I respectfully dissent.
I.
The bankruptcy court treated appellant’s children and stepchildren as fractional units for purposes of Chapter 13’s means test, calculating the fractions based on the number of days per year the chil *243 dren resided with her. The chief problem with this approach is that it lacks a foundation in statutory text. Any “interpretation of the Bankruptcy Code ... must begin ... with the language of the statute itself,” Ransom v. FIA Card Servs., — U.S.-, 131 S.Ct. 716, 723, 178 L.Ed.2d 603 (2011) (internal quotation marks and citation omitted), and it is here that the bankruptcy court finds itself on shaky ground.
According to the Bankruptcy Code, a debtor’s “disposable income” equals “current monthly income received by the debt- or ... less amounts reasonably necessary to be expended” for certain statutorily recognized expenses. 11 U.S.C. § 1325(b)(2) (2006). The Code instructs a debtor to use a statutorily prescribed formula known as the “means test” to calculate her deductions for “reasonably necessary” expenditures and her disposable income if her “current monthly income, when multiplied by 12,” exceeds the “median family income” in her state for “household[s]” with the same number of “individuals” as hers or fewer. Id. § 1325(b)(3). If the means test applies, as the parties agree it does here, then the amount of the deduction is based in part on the number of “dependents” the debtor has. Id. § 707(b)(2)(A)(ii)(I). The bankruptcy court’s approach embraces the startling conclusion that the meaning of the terms “individuals” and “dependents” in these provisions can encompass fractional human beings.
A textual rendering of statutes may seem inconvenient and even incorrect at times, but it has the long-term benefit of pushing Congress to precision and courts to observance of enacted law. The approach below may seem to reflect the economic realities of modern domestic life where children split time between parents, but it is hardly the only approach capable of doing so. Indeed, as the majority acknowledges, bankruptcy courts have a variety of other options available that may suit the circumstances of the case without so grievous an assault upon the statutory text. See In re Kops, No. 11-41153, 2012 WL 438623, at *2-5 (Bankr.D.Idaho Feb. 9, 2012) (canvassing the primary approaches bankruptcy courts have adopted for determining the size of a debtor’s “household”). We need not endorse one or the other approach as the absolute and invariable best in order to know that the fractional approach is wrong.
Whatever the merits or demerits of the bankruptcy court’s fractional view, it is not how we ordinarily interpret statutes. The entire process of determining the size of a debtor’s “household” in order to decide whether the means test applies and applying the means test in order to calculate a debtor’s disposable income is defined by reference to “individuals” and “dependents.” See 11 U.S.C. §§ 1325(b)(3), 707(b)(2)(A)(ii)(I). The fact that “Congress did not define ‘household,’ ” ante, at 241, “individuals,” or “dependents” in a definitions section does not entitle bankruptcy courts to take liberties with those terms. On the contrary, “[w]hen terms used in a statute are undefined, we give them their ordinary meaning,” Hamilton v. Lanning, — U.S.-, 130 S.Ct. 2464, 2471, 177 L.Ed.2d 23 (2010) (internal quotation marks and citation omitted), and the common meaning of the words “individual” and “dependent” does not include partial people. As the Supreme Court recently observed, the word “ ‘individual’ ordinarily means ‘[a] human being, a person.’ ” Mohamad v. Palestinian Auth., — U.S. -, 132 S.Ct. 1702 1707, 182 L.Ed.2d 720 (2012) (quoting 7 Oxford English Dictionary 880 (2d ed.1989)). Similarly, the ordinary meaning of “dependent” is “a person who relies on another for support.” Merriam-Webster’s Collegiate Dictionary *244 593 (10th ed.1999). Neither of these definitions authorizes the approach adopted by the bankruptcy court: a fractional view destined for intrusiveness in its effort to capture every sliver of time a child resides with a debtor.
The ordinary meaning of these terms is confirmed by their usage in other federal enactments. Cf. Lanning, 130 S.Ct. at 2472 (consulting definitions of the word “projected” in other federal statutes in order to interpret the term in 11 U.S.C. § 1325(b)). To start with, “Congress does not, in the ordinary course, employ the word [individual] any differently” than the “common usage” of the word “to denote a natural person.” Mohamad, 132 S.Ct. at 1707. Similarly, the word “dependent” appears frequently in federal statutes, yet I can find no instance where it is defined to include a fractional unit. For example, as any taxpayer knows, he cannot claim .37 dependency on his return, even if his child lived with him for part of the year. See 26 U.S.C. § 152(a)(1), (c)(1)(B) (defining “dependent” for purposes of federal income taxes to include “an individual ... who has the same principal place of abode as the taxpayer for more than one-half of [the relevant] taxable year”).
Nor is there anything in the Bankruptcy Code that suggests we should assign these terms a contrived fractional definition. In order for us to conclude that Congress has assigned “the word ‘individual’ ... a broader or different meaning” than a “natural person,” “there must be some indication Congress intended such a result.” Mohamad, 132 S.Ct. at 1707 (emphasis in original). There is none here. The Bankruptcy Code speaks only in terms of whole “individuals” and “dependents,” 11 U.S.C. §§ 1325(b)(3), 707(b)(2)(A)(ii), and I can find “no textual or other indication in the Code ... to show that Congress intended debtors to calculate ‘fractional dependents,’ or ‘fractional household members,’ in completing means test calculations.” Kops, 2012 WL 438623, at *5. Nor has the bankruptcy court or appellee “given us [any] reason in the statutory text or context to disregard the ordinary meaning of’ the terms individual or dependent, FCC v. AT & T, Inc., — U.S. -, 131 S.Ct. 1177, 1184, 179 L.Ed.2d 132 (2011), having chosen instead to rely on policy arguments to advance their position. Because we must “use the ordinary meaning of terms unless context requires a different result,” Gonzales v. Carhart, 550 U.S. 124, 152, 127 S.Ct. 1610, 167 L.Ed.2d 480 (2007), this lack of statutory support should have been dispositive.
I recognize that these provisions are not models of clarity, but that does not give us the right to overlook those things about the text that are clear. One such thing is the Code’s treatment of a debtor’s dependents as whole persons, not percentages to be rounded up.
II.
My disagreement with the lower court’s approach does not end with its lack of textual support. I also object to its decision to update the Bankruptcy Code to address the increase in split custody arrangements. From the start, the bankruptcy court made clear that its interpretation would be guided by the need to “address! ] the growing number of debtors with blended families and joint custody obligations without ignoring the economic realities of a debtor’s living situation.” In re Johnson, No. 10-07244-8-JRL, 2011 WL 5902883, at *1 (Bankr.E.D.N.C. July 21, 2011). It consequently chose to employ fractional units not because of any textual analysis, but out of a belief that this approach was “the best method the court can employ to ‘adapt to dynamic economic change including various types of *245 family structures regardless of size, shape, or composition.’ ” Id. at *2 (quoting In re Robinson, 449 B.R. 473, 482 (Bankr.E.D.Va.2011)).
These may be laudable goals, but in our legal system, we leave the updating of statutes to Congress. The Supreme Court has rejected “a dynamic view of statutory interpretation, under which the text might mean one thing when enacted and yet another” if circumstances later change, Harris v. United States, 536 U.S. 545, 556, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), choosing instead to adhere to “the general presumption that legislative changes should be left to Congress.” State Oil Co. v. Khan, 522 U.S. 3, 20, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997). Thus, while it may be true that many modern “households look increasingly different from the outmoded images of the ‘traditional’ family,” In re Robinson, 449 B.R. 473, 482 (Bankr.E.D.Va.2011), it is not our job to amend the Bankruptcy Code to account for these social changes.
Nor is there any reason to think that the legislative branch cannot respond to these challenges. In other areas of the law, Congress has proven quite capable of drafting statutes that account for a range of family structures. The Internal Revenue Code, for instance, provides an elaborate “[sjpecial rule for divorced parents” that determines which parent can claim the child as a dependent for income tax purposes in a split custody arrangement. 26 U.S.C. § 152(e). Similarly, Congress has created a detailed method for determining the “[p]arental income and assets for a student whose parents are divorced or separated” for purposes of higher education funding. 20 U.S.C. § 1087oo(f)(1). These statutes offer carefully tailored and democratically enacted mechanisms for addressing a variety of living arrangements. If Congress wishes to do the same in the Bankruptcy Code, it is perfectly able to do so.
And even if Congress does not amend the Code, courts can still take economic realities into account without slicing a debtor’s dependents into bits and pieces. Bankruptcy courts can and do apply a version of the economic unit approach that simply considers whether there is an economic relationship between a debtor and a purported dependent rather than trying to measure that relationship in fractional terms. At least one court, for instance, has adopted the economic unit approach while explicitly refusing to treat children in a split custody arrangement as fractions. See Kops, 2012 WL 438623, at *5. Others have applied the economic unit approach without dividing dependents when they easily could have. In In re Jewell, 365 B.R. 796, 802 (Bankr.S.D.Ohio 2007), for example, the court noted that the debtors provided some limited financial support to their adult son, but it did not treat him as a fractional member of the household based on the ratio of his parents’ support to his total income. See also In re Gaboury, No. 11-10725, 2011 WL 5833972, at *1-2 (Bankr.D.R.I. Nov. 18, 2011) (same). In sum, courts need not engage in legislative revisions in order to render decisions that reflect economic reality.
III.
Finally, by allowing judges to treat dependents as fractions, today’s decision will require courts to conduct more intrusive and more litigious proceedings in order to apply the Chapter 13 means test. Assigning dependents precise percentages will almost always demand a more searching examination of a debtor’s circumstances than an approach that treats them as whole beings.
In this case, for instance, the bankruptcy court divided the number of days of the *246 year Johnson’s sons and stepsons lived with her by 365 and then rounded off the results to two decimal places. Calculations involving this degree of precision are unlikely to be simple affairs. For while the parties in this case stipulated to the number of days Johnson’s sons and stepsons reside with her each year, that will not always be the case. One can easily envision estranged parents disputing the details of their custody arrangements in bankruptcy court, especially when those details were not settled in or vary from a state court order. See Kops, 2012 WL 438623, at *1 (noting that the debtor’s temporary divorce order granted him “ ‘supervised visitation’ with the children during the pendency of the divorce action, but provided no guidance on when, or for how long, each visit should occur”); Robinson, 449 B.R. at 475 n. 1 (noting that the “Debt- or testified that visitation schedules were originally established by the state court for different days, but the Debtor has arranged schedules with the mothers of his children”).
The upshot of this is that courts will often need to scour a debtor’s financial records as well as hear testimony from the debtor and his family in order to calculate household size for purposes of the means test. Such proceedings are apt to be lengthy and intrusive, if not downright litigious. The majority seems to believe that this is an acceptable price to pay for greater economic accuracy, bemoaning the prospect of “under- and over-inclusive” determinations of debtors’ disposable income if “individuals” and “dependents” are treated as whole persons. Ante, at 241-42. It contends that such inaccuracies can be averted if the “part-time members of the [debtor’s] household” are “included for the fraction of time during which they are a part of the debtor’s household expenses.” Id.
But this exhortation to such fractional determinations suffers not only from its inconsistency with the text of the Bankruptcy Code, but also from the fact that such perfect accuracy was recognized by Congress as an elusive goal that carried significant litigating costs. According to the Supreme Court, “Congress intended the means test to approximate the debt- or’s reasonable expenditures on essential items,” Ransom, 131 S.Ct. at 725 (emphasis added), by replacing “the pre-BAPCPA case-by-case adjudication of above-median-ineome debtors’ expenses” with “a standardized formula,” id. at 729. Indeed, one of the purposes of this formula was to “reduc[e] litigation on the issue of how much a debtor can pay.” In re Armstrong, 370 B.R. 323, 328 (Bankr.E.D.Wash.2007). By permitting the calculation of a debtor’s household size out to two decimal places, today’s decision lets the sort of litigation Congress sought to prevent in through the backdoor.
Of course, careful inquiry into a debtor’s financial records is a part of any bankruptcy proceeding, and treating dependents as whole individuals may reduce litigation only to a degree. But the decision on where to draw the line between what can and cannot be litigated in this context has already been made by Congress, and we cannot transgress this textual boundary for the sake of what can be a changing and elusive economic accuracy. Indeed, even the bankruptcy court here fell well short in its quest for perfect accuracy, for the number of days a child spends with his parent is only a very rough proxy for the amount of financial support the parent provides the child.
To be sure, treating children in joint custody arrangements as whole individuals may lead to some inaccuracies redounding to the benefit of either debtors or creditors, depending on the particular case. *247 But that problem “is the inevitable result of a standardized formula like the means test.” Ransom, 131 S.Ct. at 729. The same inaccuracy would occur, for example, if a debtor bore all the costs of child support while remaining frugal, as the means test would allow him to claim standardized expenses greater than his actual costs. Kops, 2012 WL 438623, at *5 n. 18. In the interest of administrability, “Congress chose to tolerate the occasional peculiarity that a brighter-line test produces.” Ransom, 131 S.Ct. at 729. We have no authority to rework that formula today.
IV.
I understand the argument to the contrary. It is contended that fractionalization is simply a fact-finding tool, to be deployed as circumstances dictate. The approaches to such fact finding are several, and, the argument goes, we should not take one off the table as a matter of law. Moreover, “fractionalization” is really a misnomer because it is not a matter of fractionalizing human beings, but rather of calculating the percentage of time that whole persons spend in a household. Finally, in rounding off the fraction, the bankruptcy court arrived at three whole “individuals” in the end.
This argument, however, understates just how unconventional the bankruptcy court’s approach was. The bankruptcy court began by identifying the number of days in a year that each child resided with the debtor. It then divided each of those numbers by 365, yielding five fractions— one for each child. Indeed, the bankruptcy court equated the children with these fractions, holding that “each [of the debt- or’s children] constitute^] .56 members of the household” and that “each [of the debt- or’s stepchildren] constitute^] .49 members.” Johnson, 2011 WL 5902883, at *3. After calculating these fractions, the bankruptcy court added them together for a total of 2.59 household members. Finally, without any explanation, the bankruptcy court rounded this total up to three. Such rounding obscures what is really happening: the calculation of fractions for each child, the reduction of the children to these fractions, and the addition of the fractions to yield one larger fraction. In other words, the rounding obscures the inconsistency between the bankruptcy court’s approach and the text of the Bankruptcy Code. What we really have here is a case of Congress taking an option off the table and the bankruptcy court putting it back into play.
I recognize that bankruptcy courts have a degree of discretion in applying the Code, and I do not seek to needlessly constrain their flexibility. But that discretion is not unlimited. “Bankruptcy courts lack authority to ... depart from [rules] in the Code ... to implement their own views of wise policy,” In re A.G. Fin. Serv. Ctr., Inc., 395 F.3d 410, 413-14 (7th Cir.2005), and dividing a debtor’s dependents into fractions falls outside those statutory bounds. Nor is such an approach even necessary to preserve flexibility in administering the Code. Eliminating the option of carving up children for purposes of the means test does not prevent bankruptcy courts from choosing from among multiple ways to calculate a debtor’s household size or from taking the economic circumstances of a debtor into account. Judges can get along just fine in this area without embracing interpretations that co-opt the legislative function. With all respect for my friends who see this matter differently, I would reverse the judgment.