**Carlton McKALLY, Plaintiff,**

v.

**Officer Richard PEREZ, Defendant.**

**Case No. 14–22630–CIV.**

United States District Court,
S.D. Florida.

Signed Feb. 5, 2015.

Filed Feb. 6, 2015.

Wendell Terry Locke, Locke Law, P.A., Plantation, FL, for Plaintiff.

Annery Pulgar Alfonso, Miami, FL, for Defendant.

### ORDER

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court upon Defendant, Officer Richard Perez ("Perez['s]") Motion to Dismiss Complaint With Prejudice … ("Motion") [ECF No. 12], filed October 29, 2014. On November 9, 2014, Plaintiff, Carlton McKally ("McKally") filed a Response Opposing Defendant's Motion to Dismiss … ("Response") [ECF No. 17]. On November 20, 2014, Defendant filed a Reply … ("Reply") [ECF No. 18].

The only count in the Complaint [ECF No. 4] is brought pursuant to 42 U.S.C. section 1983, alleging Perez violated McKally's civil rights under the Fourth and Fourteenth Amendments to the United States Constitution by falsely arresting McKally. (*See* Compl. 5). In his Motion, Perez seeks an order dismissing the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief and on the basis of qualified immunity. (*See generally* Mot.). The Court has carefully reviewed the Amended Complaint, the parties' written submissions, and applicable law.

### I. BACKGROUND

On December 28, 2013, McKally was washing clothes at the Swifty Coin Laundry (the "laundromat"), located at 13500 West Dixie Highway in North Miami, with his daughter, a minor. (*See* Compl. ¶¶ 7, 9). The laundromat is bounded by three streets: to the north is 136th Street, on the west is NE 10th Avenue, and on the southeast side is West Dixie Highway. (*See id.* ¶ 7). McKally was at the laundromat for over an hour, during which time his car was parked with its front facing forward in one of the parking spaces on the southeast side of the laundromat building. (*See id.* ¶¶ 8, 10). McKally's car had a paper tag with the tag numbers written on it, along with the words "LOST TAG." (*Id.* ¶ 16).

After finishing his laundry, McKally opened the trunk of his car to place his clothes inside. (*See id.* ¶ 11). While loading his laundry, McKally had observed a Miami–Dade Police Department ("MDPD") vehicle drive by him, traveling south on West Dixie Highway. (*See id.* ¶ 11). McKally saw the police vehicle slow down as it drove by, and he saw a MDPD officer, Defendant Perez, look in his direction. (*See id.*). According to McKally, while he was loading his laundry and his car trunk was open, Perez could not visibly see the car's temporary tag because the tag faced vertically toward the sky. (*See id.* ¶ 12).

After McKally placed his clothes in the trunk, closed the trunk, and secured his daughter in her car seat, he backed his car out of the parking space and drove around the corner of the laundromat building to the north exit on 136th Street. (*See id.* ¶¶ 13, 14). As McKally was leaving the laundromat parking lot, he saw what appeared to be the same MDPD vehicle accelerate toward him, traveling eastbound on 136th Street, and stop in front of McKally's car, causing McKally also to stop. (*See id.* ¶ 14). McKally backed up his car so the MDPD vehicle could have access to the laundromat parking lot, at which point the MDPD vehicle turned in to the laundromat parking lot and pulled directly in front of McKally's car. (*See id.* ¶ 15). Perez exited the MDPD vehicle and walked to the rear of McKally's car, saw the paper tag, and accused McKally of having a fraudulent tag. (*See id.* ¶ 16). McKally told Perez he had recently report-

ed the tag as stolen to the North Miami Police Department and produced "documentation to that effect." (*Id.* ¶ 17). At this time, multiple MDPD officers arrived on the scene. (*See id.*).

Perez asked McKally for his license, registration, and proof of insurance, all of which McKally provided. (*See id.* ¶ 18). After a few minutes, Perez returned to McKally and advised him his driver's license was suspended and accused McKally of knowing his license was suspended. (*See id.* ¶ 20). In response, McKally told Perez "he had a D6 clearance in his possession showing that any issue he may have had concerning a suspended driver's license was resolved on September 10, 2013." (*Id.* ¶ 21). But "[u]nbeknownst to McKally, his driver's license was suspended again on September 23, 2013, as a result of an insurance cancellation." (*Id.* (alteration added)).

Perez told McKally he was having McKally's car towed. (*See id.* ¶ 22). McKally told Perez his father was on his way to the laundromat and asked if his father could drive McKally's car and take McKally's daughter with him. (*See id.*). Perez responded, " 'I'm not trying to hear it. Since you want to ask questions, you're getting in the back of my police car— you're being arrested.' " (*Id.* ¶ 23). McKally was handcuffed and placed in the back seat of Perez's police vehicle. (*See id.*).

When McKally's father arrived, Perez refused to allow him to drive McKally's car, saying he was having it impounded. (*See id.* ¶ 24). McKally's father was permitted to remove McKally's belongings from the car and to take McKally's daughter. (*See id.* ¶ 25). McKally was arrested

for possession of a fraudulent tag. (*See id.* ¶ 26).[1]

Plaintiff's Complaint raises a single count against Perez, brought pursuant to section 1983, claiming Perez violated McKally's civil rights under the Fourth and Fourteenth Amendments to the United States Constitution by falsely arresting McKally.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To state a claim for relief, a pleading must contain: "(1) a short and plain statement of the grounds for the court's jurisdiction ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." FED.R.CIV.P. 8 (alterations added). Although this pleading standard "does not require 'detailed factual allegations,' ... it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (alteration added) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 556 U.S. at 679,

---

1. According to the Complaint, while Perez transported McKally to the police station, he drove at a speed exceeding 75 miles per hour over railroad tracks, causing McKally's head

to strike the roof of the vehicle and to sustain injuries. (*See* Compl. ¶ 27). This fact is not relevant to McKally's false arrest claim.

129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, 129 S.Ct. 1937 (alteration added) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir.2009) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, —— U.S. ——, 132 S.Ct. 1702, 182 L.Ed.2d 720 (2012). When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997).

## III. DISCUSSION

"A complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir.2003) (citing *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1022 (11th Cir.2001) (*en banc* )). In the Motion, Perez argues he is entitled to the affirmative defense of qualified immunity. Once the affirmative defense of qualified immunity is asserted, "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. Absent such allegations, it is appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage." *Id.* (alterations, ellipses, internal quotation marks, and citations omitted); *see also Bloom v. Alvereze*, 498 Fed.Appx. 867, 872 (11th Cir.2012) (noting "a defense of qualified immunity may be addressed in a motion to dismiss, which will be granted if the complaint fails to allege the violation of a clearly established constitutional right" (internal quotation marks and citation omitted)).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). For government officials sued in their individual capacities, "[q]ualified immunity offers complete protection" so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir.2004) (alteration added; internal quotation marks and citation omitted).

To be entitled to the qualified-immunity defense, a government official must demonstrate "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (internal quotation marks and citation omitted). A government official proves he acted within his discretionary authority by showing "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Id.* (internal quotation marks and citation omitted). In the instant case, the parties do not dispute the acts complained of were within the scope of Perez's discretionary authority.

Thus, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate."[2] *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir.2002) (citation omitted); *Montoute v. Carr,* 114 F.3d 181, 184 (11th Cir.1997) ("Once an officer or official has raised the defense of qualified immunity, the burden of persuasion as to that issue is on the plaintiff." (citations omitted)). In order to prevent dismissal of his claims under the doctrine of qualified immunity, a plaintiff must allege sufficient factual matter, accepted as true, showing (1) the defendant violated a constitutional right, and (2) the constitutional right was "clearly established"[3] at the time of the violation.[4] *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Sharp v. Fisher,* 532 F.3d 1180, 1183 (11th Cir.2008) (per curiam); *McClish v. Nugent,* 483 F.3d 1231, 1237 (11th Cir.2007).

 "In the context of a claim of false arrest, an officer is entitled to qualified immunity where the officer had at least arguable probable cause for the arrest. The existence of probable cause—and qualified immunity—is determined based on an objective standard, and bare allegations of malice are insufficient to survive a motion to dismiss." *Bloom,* 498 Fed.Appx. at 878–79 (internal citation omitted); *see also Lee,* 284 F.3d at 1195 (noting "*arguable* probable cause ... is all that is required for qualified immunity to be applicable to an arresting officer" (emphasis in original; alteration added; internal quotation marks and citation omitted)). For probable cause to exist:

> both federal and Florida law say that an arrest must be objectively reasonable based on the totality of the circumstances. This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. Although probable cause requires more than suspicion, it does not require convincing proof.

*Lee,* 284 F.3d at 1195 (internal quotation marks and citations omitted). Arguable

---

2. This two-step approach is embodied in the Eleventh Circuit's two-part *Zeigler/Rich* analysis:

 1. The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."
 2. Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional law."

 *Courson,* 939 F.2d at 1487 (quoting *Rich v. Dollar,* 841 F.2d 1558, 1563–64 (11th Cir. 1988)); *see also Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983) (per curiam).

3. Decisions of the United States Supreme Court, the Eleventh Circuit, and the Supreme Court of Florida can clearly establish law in this jurisdiction. *See McClish,* 483 F.3d at 1237. For the law to be "clearly established," it must be so clear that every objectively reasonable official understands it to prohibit the challenged act. *See Vinyard v. Wilson,* 311 F.3d 1340, 1351 (11th Cir.2002). This typically requires that the particular constitutional right in question be clearly established "in light of the specific context of the case, not as a broad general proposition...." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. The purpose of this requirement is to "ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Id.* at 206, 121 S.Ct. 2151.

4. District court judges have the discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson,* 555 U.S. at 236, 129 S.Ct. 808.

probable cause "exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed to arrest." *Id.* (internal quotation marks and citation omitted).

▮ The Court considers whether the allegations of the Complaint sufficiently plead that Perez violated McKally's clearly established constitutional right to be free from a warrantless arrest without probable cause. Pursuant to Florida Statute section 322.34(1), "any person whose driver license or driving privilege has been canceled, suspended, or revoked ... who drives a vehicle upon the highways of this state while such license or privilege is canceled, suspended, or revoked is guilty of a moving violation." FLA. STAT. § 322.34(1) (alteration added). Moreover, any person who, "knowing of such cancellation, suspension, or revocation" drives a vehicle, is guilty of a misdemeanor or felony. *See* FLA. STAT. § 322.34(2). "[E]ven a minor offense, such as a misdemeanor or a traffic violation, can be the basis for a full custodial arrest." *Ybarra v. City of Miami*, No. 03–14660, 2005 WL 6526126, at *3 (11th Cir. Jan. 5, 2005) (per curiam) (alteration added) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001)); *see also Lee*, 284 F.3d at 1196.

▮ Based on the facts alleged, on December 28, 2013, Perez saw McKally driving on a license that was suspended on September 23, 2013. When Perez accused McKally of knowing his license was suspended, Perez told McKally "he had a D6 clearance in his possession showing that any issue he may have had concerning a suspended driver's license was resolved on September 10, 2013." (Compl. ¶ 21).

McKally was unaware his license had been suspended again on September 23, 2013. (*See id.*). McKally does not allege he specifically told Perez he did not know his license was suspended again on September 23, but McKally's statement regarding the resolution of any issues with his license on September 10 could be construed as an implication he did not know his license had been suspended again on September 23.

▮ Construing the Complaint in a light most favorable to McKally and accepting the factual allegations as true, the Court nonetheless finds reasonable officers who observed McKally driving with a suspended license, and heard McKally admit his license had previously been suspended but not explicitly repudiate knowledge of the new suspension charge, could have believed probable cause existed to carry out an arrest. Moreover, any lack of evidence that McKally was specifically aware his license had been suspended is not dispositive of the lawfulness of the arrest. "While the knowledge element may be critical in securing a conviction under [Florida Statute section] 322.34(2), no officer has a duty to prove every element of a crime before making an arrest." *United States v. Quintana*, 594 F.Supp.2d 1291, 1298 (M.D.Fla.2009) (alteration added; internal quotation marks and citation omitted) (finding probable cause to arrest existed where officer observed defendant driving with a suspended license even though the record was "devoid of evidence that Defendant knew his license was suspended"); *Lee*, 284 F.3d at 1195 ("Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest." (internal quotation marks and citations omitted)).[5] Because

---

**5.** The lawfulness of McKally's arrest for driving on a suspended license is not undermined

by the fact Perez said he was arresting McKally for possession of a fraudulent tag, as

McKally's arrest was supported by arguable probable cause and did not violate McKally's constitutional rights, Perez is entitled to qualified immunity on the single section 1983 claim raised in the Complaint.

In response to the Motion, McKally raises a new claim that Perez violated Plaintiff's civil rights under the Fourth Amendment by conducting an illegal traffic stop. (*See* Resp. 4–6). McKally asserts at the time of the traffic stop, Perez "did not know *anything* about McKally other than what he looked like" and Perez "could not see McKally's tag (because the tag faced the sky while McKally placed his laundry into the vehicle's trunk)." (*Id.* 4–5). McKally therefore claims Perez's initial traffic stop was in violation of clearly established law that, "except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment." *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). (*See* Resp. 5–6).

■ As Perez correctly notes, a complaint may not be amended by briefs in opposition to a motion to dismiss. *See Huls v. Llabona,* 437 Fed.Appx. 830, 832 n. 5 (11th Cir.2011) (holding that an argument raised for the first time in response to defendant's motion to dismiss, instead of in an amended complaint, was not properly raised before the district court and would

not be considered on appeal); *Fleming v. Dowdell,* 434 F.Supp.2d 1138, 1148 n. 9 (M.D.Ala.2005) (finding dismissal of the Fourth Amendment claim was proper because "[a] complaint may not be amended by briefs in opposition to a motion to dismiss or motion for summary judgment" (alteration added; citations omitted)). But assuming he would allege this in an amended complaint, the Court finds McKally cannot plead facts that "permit the [C]ourt to infer more than the mere possibility of misconduct," and thus, he has not shown he would be entitled to relief. *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937 (alteration added).

■ "Because a routine traffic stop is only a limited form of seizure ... more analogous to an investigative detention than a custodial arrest," the legality of these stops is analyzed under the standard articulated in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *United States v. Ramirez,* 476 F.3d 1231, 1236 (11th Cir.2007) (alteration added; internal quotation marks and citations omitted). "[L]aw enforcement officers may seize a suspect for a brief, investigatory *Terry* stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Jordan,* 635 F.3d 1181, 1186 (11th Cir.2011) (alteration added) (quoting *Terry,* 392 U.S. at 19–20, 30, 88 S.Ct. 1868).

■ Reasonable suspicion is a less demanding standard than probable cause

---

"the validity of an arrest does not turn on the offense announced by the officer at the time of the arrest. Indeed, when an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense

for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." *Lee,* 284 F.3d at 1195–96 (brackets removed; internal quotation marks and citations omitted).

but "requires at least a minimal level of objective justification for making the stop." *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir.2000) (internal quotation marks and citation omitted). "A law enforcement official who reasonably but mistakenly concludes that reasonable suspicion is present is still entitled to qualified immunity" because the question is "whether the officer had 'arguable' reasonable suspicion to support an investigatory stop." *Id.* at 1165–66 (citations omitted).

Pursuant to Florida law, "[e]very vehicle, at all times while driven, stopped, or parked upon any highways, roads, or streets of this state, shall be licensed in the name of the owner thereof in accordance with the laws of this state ... and shall ... display the license plate ... assigned to it by the state.... No license plates other than those furnished by the state shall be used." Fla. Stat. § 316.605(1) (alterations added). Florida law also strictly regulates use of temporary license plates, *see* Fla. Stat. § 320.131, has specific instructions for replacement license plates, *see id.* § 320.0607, and provides that "[a]ny law enforcement officer ... may at any time inspect a license plate ... for proper display and legibility," *id.* § 320.0607(1) (alterations added).

 According to the facts alleged in this case, McKally's car had "a paper tag with the tag numbers written, along with the words 'LOST TAG,'" and he was able to produce documentation to show he recently reported the tag as stolen to the North Miami Police Department. (Compl.

¶¶ 16, 17). McKally does not argue that his makeshift license tag does not provide arguable reasonable suspicion to support an investigatory stop. Rather, McKally's argument that the traffic stop was illegal is premised on his claim that Perez never saw the makeshift license tag before making the stop because when McKally first saw Perez driving past him and looking at him, McKally was placing his clothes into the car trunk and therefore the car's tag faced vertically toward the sky and was not visible to Perez.[6] (*See id.* ¶ 12). McKally does not, however, allege Perez could not have seen his tag at some other point in time, which is notable in light of the fact McKally was at the laundromat for over an hour, during which time his car was parked, front forward, in one of the parking spaces on the southeast side of the building, with its rear tag facing the West Dixie Highway—the same street Perez drove down when McKally first saw him. (*See id.* ¶¶ 7, 8, 10, 11).

 The facts, as alleged in the Complaint, do not permit the Court to infer more than the mere possibility that Perez carried out the initial traffic stop without a minimal level of objective justification. "The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (alteration added; internal quotation marks and citations omitted). Given the more likely

---

**6.** In his Response, McKally makes several vague and unsupported statements that "the reason for stopping McKally appears to be a classic case of profiling." (Resp. 3). There are no facts alleged to support this statement and there is no claim regarding any violation of the Equal Protection Clause. *See Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct.

1769, 135 L.Ed.2d 89 (1996) ("[T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." (alteration added)).

explanation that Perez saw McKally's makeshift paper tag—either when he was driving by as McKally loaded his laundry into his trunk, at a time or from a vantage point McKally was unaware of, or at some point during the previous hour McKally's car tag was visible from the street—the Court concludes McKally's Complaint has not "nudged his claim[ ]" of an illegal traffic stop "across the line from conceivable to plausible." *Id.* at 680, 129 S.Ct. 1937 (alteration added; bracket removed; internal quotation marks and citation omitted).

## IV. CONCLUSION

The facts taken in a light most favorable to McKally fail to support a claim that Perez had no arguable probable cause to arrest McKally and no arguable reasonable suspicion to make the initial traffic stop.[7] Having failed to allege a constitutional violation, the Court finds Perez is entitled to qualified-immunity from individual liability. *See Bloom,* 498 Fed.Appx. at 878 ("If arguable probable cause is evident on the face of a complaint, then pre-discovery dismissal is appropriate based on qualified immunity."). Therefore, it is **ORDERED AND ADJUDGED** that the Motion **[ECF No. 12]** is **GRANTED.** Nevertheless, because "a more carefully drafted complaint might state a claim upon which relief could be granted," *Friedlander v. Nims,* 755 F.2d 810, 813 (11th Cir. 1985) (citation omitted), Plaintiff has until **February 17, 2015,** to file an amended complaint that contains facts explaining how or why Perez was unable to see the tag at any time prior to the traffic stop, failing which the case will be dismissed.

---

**7.** Because the Court finds McKally has not sufficiently plead a constitutional violation, the Court does not reach the second *Saucier* prong regarding whether Perez violated a clearly established constitutional right.