[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14912
_____

D.C. Docket No. 1:06-cv-21879-WMH


ANDREW B. BLOOM,
ADELE S. BLOOM,

                    Plaintiffs - Appellants,

versus

MAYOR ALVEREZE, etc., et al.,

                    Defendants,

MELISSA PEACOCK,
individually and as an Officer of the Miami-Dade Police Department,
SHEREE DIBERNARDO,
individually and as an Officer of the Miami-Dade Police Department,
PATRICK REYNOLDS,
individually and as an Officer of the Florida Fish & Wildlife Conservation
Commission,
FLORIDA FISH & WILDLIFE CONSERVATION COMMISSION,
an agency of the State of Florida,
EVERGLADES OUTPOST, INC., et al.,

                    Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 19, 2012)

Before HULL and FAY, Circuit Judges, and GOLDBERG,[*] Judge.

FAY, Circuit Judge:

Andrew and Adele Bloom appeal the dismissal with prejudice of their Third Amended Complaint for failure to state a claim for which relief could be granted in an action alleging multiple violations under 42 U.S.C. § 1983 and various state tort claims. The Blooms argue that the district court prematurely applied qualified immunity, that the various claims are sufficiently alleged, and that all claims are timely because the claims either relate back to Mr. Bloom's initial complaint or are based on continuing torts. After oral argument, reviewing the record, and for the reasons that follow, we affirm the district court's orders dismissing the Blooms' claims with prejudice.

I.    Facts[1]

_____

[*] Honorable Richard W. Goldberg, Senior Judge, U.S. Court of International Trade, sitting by designation.

[1] In reviewing a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), we accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308

The Blooms resided at a five-acre ranch in south Miami-Dade County, Florida, at which they kept a multitude of farm and exotic animals. On July 31, 2002, county and state law enforcement personnel executed a search warrant that led to the arrest of Mr. Bloom on animal cruelty charges and the seizure of his animals. On July 1, 2005, the State Attorney abandoned the charges against Mr. Bloom, but the animals were not returned. On July 27, 2006, Mr. Bloom filed his initial *pro se* complaint, which was dismissed. Ultimately, the Blooms – with the assistance of counsel – filed the Third Amended Complaint, which contains ten counts of various federal and state claims against nine defendants. In two separate orders, the district court dismissed all claims with prejudice.

## A.     The Search Warrant

At the end of July 2002, a search warrant was issued for the Blooms' ranch; the sole factual support for the warrant was Miami-Dade County Police Officer Melissa Peacock's affidavit, which allegedly contained misstatements and omissions. Officer Peacock drafted the affidavit based on undocumented complaints from private citizens, statements from fellow law enforcement personnel, and information reported by Laurie Waggoner, the director of the South

---

(11th Cir. 2006). However, we are not required to accept the labels and legal conclusions in a complaint as true. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010).

Florida Society for the Prevention of Cruelty to Animals, Inc. ("SPCA").  In her affidavit, Peacock stated that she responded to the Blooms' ranch and confirmed Waggoner's observations that several animals were underweight and in poor health.  However, Peacock did not enter the Blooms' ranch and did not explain in the affidavit how she was able to confirm Waggoner's observations from off the property.  The Blooms allege that the misrepresentations by Peacock were material and the facts underlying the affidavit were not sufficiently reliable.

## B.    The Arrest and Seizure

On a rainy July 31, 2002, Miami-Dade County Police officers, accompanied by Florida Fish & Wildlife Conservation Commission ("FWCC") officers and non-deputized SPCA employees, executed the aforementioned search warrant at the Blooms' ranch.  Mr. Bloom[2] accompanied Miami-Dade County Police Sergeant Sheree DiBernardo, Peacock, and others for an inspection of the ranch's barn.  On the way, Peacock observed several dead ducks and two peacocks in outdoor cages without food or water.  As law enforcement personnel further investigated the ranch, they found several underweight animals without food or water.  However, there was a large amount of grain in a vehicle on the property that was intended to be distributed once the weather cleared.

---

[2]  Mrs. Bloom was out of town on the day the search warrant was executed.

4

Mr. Bloom was arrested by Peacock and threatened, that if he did not consent to giving his animals to the police, he would rot in jail. Without Mr. Bloom's consent, the County officers, in concert with the FWCC and the SPCA, removed 300 animals from the Blooms' ranch for placement with the SPCA and Everglades Outpost, Inc.

### C.    The Prosecution and Forfeiture Proceedings

Mr. Bloom was charged in a 38-count information, consisting of 16 felony counts of animal cruelty, 20 misdemeanor counts of confinement of animals without sufficient water, and 2 counts of unlicensed possession of wildlife. Additionally, Miami-Dade County initiated a civil forfeiture proceeding to dispose of the Blooms' animals.

On July 12, 2004, the State Attorney's Office dropped the felony charges and pursued only the misdemeanor charges. On July 1, 2005, the State Attorney announced a *nolle prosse* of all remaining criminal charges against Mr. Bloom, but the Blooms' animals were not returned.[3]

### D.    Procedural History

On July 27, 2006, Mr. Bloom filed a *pro se* complaint against several

---

[3] The proper disposition of the Blooms' animals is to be determined by the still-pending civil forfeiture case and is not at issue before this Court.

5

Miami-Dade County officials and agencies, complaining about the seizure of his animals and his arrest and subsequent prosecution. Simultaneously, Mr. Bloom filed a separate complaint against the FWCC and its agents. After both complaints were dismissed, Mr. Bloom filed an amended *pro se* complaint, consolidating the cases, but the amended complaint was also dismissed. On May 9, 2009, with the assistance of counsel, an 11-count Second Amended Complaint was filed, adding Mrs. Bloom as a plaintiff and adding as defendants Waggoner, the SPCA, Robert Freer,[4] and Everglades Outpost, Inc. The district court dismissed the Second Amended Complaint and expressly provided that "[the Blooms] shall have one final opportunity to refile this claim with proper supporting allegations." *Bloom v. Miami-Dade Cnty.*, No. 06-21879 (S.D. Fla. Mar. 19, 2010) (order granting, in part, motion to dismiss and denying motion to stay proceedings).

On April 9, 2010, the Blooms filed the 86-page Third Amended Complaint, alleging 10 counts against 9 different defendants. The claims are the following: Count I – 42 U.S.C. § 1983, multiple violations, brought by Mr. Bloom against all individual defendants, SPCA, and Everglades Outpost, Inc.; Count II – 42 U.S.C. § 1983, multiple violations, brought by Mrs. Bloom against the same defendants listed in Count I; Count III – 42 U.S.C. § 1983, multiple violations, against all

---

[4] Freer is the President and Director of Everglades Outpost, Inc.

6

government institution defendants; Count IV – 42 U.S.C. § 1983, arrest without probable cause, brought by Mr. Bloom against all government institution and individual officer defendants; Count V – 42 U.S.C. § 1983, false arrest and imprisonment, malicious prosecution, brought by Mr. Bloom against all defendants; Count VI – Intentional infliction of emotional distress, against all defendants; Count VII – Conspiracy, against all defendants; Count VIII – Defamation, libel, and slander, against all defendants; Count IX – Trespass to chattel, against all defendants; and Count X – Conversion, against all defendants. The Third Amended Complaint – the Blooms' fifth attempt at a sufficient pleading – combines multiple allegations of infringed constitutional rights into single counts.  However, all claims stem from Mr. Bloom's arrest and prosecution and the seizure of the Blooms' animals.

The defendants moved to dismiss the Third Amended Complaint for multiple reasons, including that the claims were time-barred, qualified or sovereign immunity barred the claims, and the Blooms failed to state a claim for which relief could be granted.  The court heard argument from the parties on March 16, 2011, and in two separate orders,[5] dismissed all claims with prejudice.

---

[5] On March 31, 2011, District Judge Hoeveler entered an order dismissing the claims against Freer, Everglades Outpost, Waggoner, and the SPCA.  Judge Hoeveler then entered an order dismissing the claims against the remaining defendants on September 16, 2011.

The Blooms subsequently filed this timely appeal.

## II.    Standard of Review

We review *de novo* a grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim, accepting the factual allegations in the complaint as true and construing them in a light most favorable to the plaintiff.  *Glover*, 459 F.3d at 1308.  Similarly, applications of statutes of limitations are reviewed *de novo*.  *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006).

Further, a defense of qualified immunity may be addressed in a motion to dismiss, which will be granted if the "complaint fails to allege the violation of a clearly established constitutional right."  *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002) (citations omitted).  We review *de novo* whether the complaint alleges such a violation, accepting the well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor, and limiting our review to the four corners of the complaint.  *Id.*

## III.    Discussion

### A.    Claims against the SPCA and Everglades Outpost Defendants

Waggoner and the SPCA (collectively the "SPCA Defendants") and Freer and Everglades Outpost, Inc. (collectively the "Everglades Outpost Defendants") are named in Counts I, II, and V through X of the Third Amended Complaint.

8

None of the SPCA Defendants or Everglades Outpost Defendants were named in the initial complaint and were not added as parties until the Second Amended Complaint, filed on May 9, 2009. After rejecting that the Blooms' claims constituted continuing torts, and implicitly rejecting relation back to the initial pleading,[6] the district court dismissed all claims against the SPCA and Everglades Outpost Defendants as time-barred. The court added that the complaint did not allege sufficient acts by the Everglades Outpost Defendants to state a cause of action under any of the counts, even if brought timely. Further, the court noted that Count V would fail against the SPCA Defendants, even if timely, because the complaint makes clear the prosecution remained at the discretion of the State Attorney.

On appeal, the Blooms argue that the claims against the SPCA and Everglades Outpost Defendants should relate back to the initial complaint, the allegations establish continuing torts, and the malicious prosecution claim in Count V was sufficiently pleaded.

### i.    Relation Back

The Blooms insist that the claims against the SPCA and Everglades Outpost

---

[6] In their response to the motion to dismiss, the Blooms raised the argument that the claims relate back to the initial pleading. The district court's order dismisses the claims as untimely without explicitly discussing relation back.

9

Defendants satisfy the test for Federal Rule of Civil Procedure 15(c),[7] but the Blooms fail to explain how these defendants received notice of the action prior to the running of the statute of limitations. Rule 15(c)(1)(C) allows an amendment to a pleading that adds a defendant to relate back to the date of the original pleading if the amendment asserts a claim that arose out of the same conduct, transaction, or occurrence set out in the original pleading and the party being brought in by the amendment "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." While the relation back provisions of Rule 15 are to be somewhat liberally applied, the provision does not support relation back where the newly added defendants were known to the plaintiff before the running of the statute of limitations and where the potential defendants should not necessarily have known that, absent a mistake by the plaintiff, they would have been sued. *Powers*, 148 F.3d at 1226.

This is not a case of mistaken identity of a party as Mr. Bloom knew the SPCA and Everglades Outpost Defendants' role in the seizure and continued

---

[7] Application of Rule 15(c) is reviewed for abuse of discretion, but findings of fact necessary for application of the rule are reviewed for clear error. *Powers v. Graff*, 148 F.3d 1223, 1226 (11th Cir. 1998).

retention of the animals prior to filing his initial pleading.  The Blooms argue that

the claims should still relate back because the SPCA and Everglades Outpost

Defendants were on notice and would not be prejudiced, as the facts set forth in

the original complaint involve the very conduct orchestrated and engineered by

them.  However, the Blooms do not identify how these defendants were noticed of

the original complaint or the claims within.  Knowledge of the underlying events

that establish a claim is not the equivalent to knowledge of the action.  *See, e.g.*,

*Williams v. United States*, 405 F.2d 234, 238 (5th Cir. 1968) (ruling, under a prior

version of Rule 15(c), that fair notice includes not just the operational facts, but

also fair notice of the existence of the asserted legal claims).[8]  The Blooms have

not satisfied Rule 15(c) and the claims against the SPCA and Everglades Outpost

Defendants do not relate back to Mr. Bloom's initial complaint.

### ii.    Continuing Torts

Relying on two discrimination cases, the Blooms contend that they allege

continuing torts, thereby tolling the running of the statutes of limitations of their

federal claims.[9]  However, the Blooms' contentions are misguided.  In determining

_____

[8]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this
Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to
October 1, 1981.

[9]  The two cases relied on by the Blooms recognize the theory of continual violations
relating to discriminating policies.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381, 102

11

whether a violation is continuing, we distinguish single, discrete acts from charges of continuously maintained illegal policies. *Beavers*, 975 F.2d at 797; *see also Del. State Coll. v. Ricks*, 449 U.S. 250, 258, 101 S. Ct. 498, 504, 66 L. Ed. 2d 431 (1980) (ruling that the emphasis is not upon the effects of earlier employment decisions; rather, it is upon whether any present violation exists); *Carter v. W. Publ'g Co.*, 225 F.3d 1258, 1265 (11th Cir. 2000) (ruling a single discriminatory act, followed by neutral, nondiscriminatory consequences, does not establish a continuing tort).

In the present case, the Blooms do not allege any continuously maintained illegal practices, but the refusal to return the seized animals.[10] The Blooms' claims are akin to an employee being improperly terminated due to his race and not being returned to his position – which would not be a continuing tort. *See Ricks*, 449 U.S. at 259, 101 S. Ct. at 504 (ruling the statute of limitations begins to run when

---

S. Ct. 1114, 1125, 71 L. Ed. 2d 214 (1982) (finding plaintiffs alleged a continuing pattern, practice, and policy of unlawful racial steering not based on isolated incidents but a continuing violation manifested in a number of incidents with at least one occurring within the relevant statutory period); *Beavers v. Am. Cast Iron Pipe Co.*, 975 F.2d 792, 798 (11th Cir. 1992) (ruling that if an employer's policy of denying insurance coverage to children not residing with the employee-parent violated Title VII, it would be a violation continuing into the present).

[10] In the Third Amended Complaint, the Blooms allege that they were the "latest victims of a relentless pursuit by Officer Peacock" but in the very next paragraph, allege that the "genesis of this case is the unseemly result of personal animosity by [Peacock, Reynolds, and Waggoner]" against Mr. Bloom. If the alleged torts were due to personal animosity towards Mr. Bloom, it is not likely – nor alleged – that any continuing illegal policy exists that would affect others in the future.

12

an employee is notified of the decision to improperly terminate the employee).

The Blooms complain not of a practice or policy, but of distinct acts by the

defendants, and have not established continuing torts.

Because the claims against the SPCA and Everglades Outpost Defendants

do not relate back to the initial pleading and are not continuing torts, if the claims

were not brought before the running of the appropriate statutes of limitations,

dismissal is appropriate.

### iii.    Federal Claims against the SPCA and Everglades Outpost Defendants

The accrual date of a cause of action brought under § 1983 is a question of

federal law.  *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 1095, 166 L.

Ed. 2d 973 (2007).  The standard rule is that accrual occurs when the plaintiff has

a complete and present cause of action.  *Id.*  The statute of limitations begins to

run when the facts which would support a cause of action are apparent or should

be apparent to a person with a reasonably prudent regard for his rights.  *Lovett v.*

*Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003).  A claim of unlawful detention accrues

once the victim becomes held pursuant to legal process, i.e., he is arraigned on

charges.  *Wallace*, 549 U.S. at 389-90, 127 S. Ct. at 1096.  Additionally, a claim

based on continued retention accrues once the state provides or refuses to provide

13

a post-deprivation remedy, i.e., forfeiture proceedings are instigated. *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991).

Counts I, II, and IV are § 1983 claims relating to the arrest of Mr. Bloom and the seizure of the animals – facts of which the Blooms were immediately aware – which occurred on July 31, 2002. Mr. Bloom was arraigned and forfeiture proceedings began shortly after his arrest – at least prior to his civil trial commencing on September 27, 2002. Thus, the four-year statute of limitations for the § 1983 claims relating to his arrest and seizure of his property began to run no later than September 27, 2002. Since the SPCA and Everglades Outpost Defendants were not added as parties until May 9, 2009, Counts I, II, and IV are clearly time-barred and were properly dismissed.

Count V, alleging malicious prosecution, is also brought pursuant to § 1983. The district court found Count V to be time-barred, but alternatively noted that even if not time-barred, Mr. Bloom failed to state a claim because he did not sufficiently plead that the defendants were the legal cause of the original proceeding. Mr. Bloom submits that he sufficiently pleaded the elements of a cause of action under Florida law, but fails to address – or satisfy – the additional constitutional element of a federal malicious prosecution claim.

To establish a malicious prosecution claim under § 1983, "a plaintiff must

14

prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) (citation omitted).[11]  Under Florida law, a malicious prosecution claim consists of six elements: (1) commencement of the original proceeding; (2) defendant was the legal cause of the original proceeding; (3) termination of the original proceeding in the plaintiff's favor; (4) absence of probable cause for the original proceeding; (5) malice; and (6) damages. *Id.*  A plaintiff must prove a seizure related to the prosecution and the plaintiff's arrest cannot serve as the required deprivation of liberty because it occurs prior to the arraignment. *Id.* at 1235.  Normal conditions of pretrial release, such as bond and a summons to appear, do not constitute a seizure violative of the Fourth Amendment, "barring some significant, ongoing deprivation of liberty, such as restriction on the defendant's right to travel interstate." *Id.* at 1236.

The trial court determined the defendants were not the legal cause of the prosecution and did not determine if the Fourth Amendment was violated.  Mr. Bloom argues on appeal that the SPCA Defendants participated in the fabrication

---

[11]  Curiously, the Blooms cite to *Kingsland* in their brief, but not for the elements of a federal malicious prosecution claim, instead relying on a Florida appellate court case to state the elements.

of the criminal charges, provided knowingly false information, and were sufficiently involved with the investigation to be considered the legal cause of the original proceeding.

However, Mr. Bloom does not allege a violation of his Fourth Amendment right to be free from unreasonable seizure and, consequently, fails to state a claim for which relief can be granted. Mr. Bloom was released after posting bond – a normal condition of pretrial release. Mr. Bloom does not argue that any significant or ongoing deprivation of liberty was imposed as a condition of pretrial release.[12] Since a complete review of the complaint confirms that Mr. Bloom fails to allege a federal claim of malicious prosecution against the SPCA Defendants, we need not consider whether the claim was time-barred.

Additionally, the Third Amended Complaint simply contains no allegations that the Everglades Outpost Defendants caused the prosecution or participated with the police in fabricating charges against Mr. Bloom. Mr. Bloom alleges that the Everglades Outpost Defendants did little other than house the animals after seizure and report the records of those animals had been destroyed. Therefore,

---

[12] The retention of the seized animals could not be used to support a malicious prosecution claim because the proper disposition of the animals will be determined by the ongoing civil forfeiture proceedings. Thus, dismissal would still be appropriate for failure to state a claim because Mr. Bloom cannot establish the required element of termination of the original proceedings in his favor.

16

Mr. Bloom fails to sufficiently allege a malicious prosecution claim against the Everglades Outpost Defendants as well.

### iv.    State Claims against SPCA and Everglades Outpost Defendants

As for the state tort claims in Counts VI through X, Florida law governs the accrual of the causes of actions. "A cause of action accrues when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1) (2003). Florida courts have recognized continuing torts, but focus on continual acts by the defendants, not continual effects of a completed act. *Suarez v. City of Tampa*, 987 So. 2d 681, 686 (Fla. 2d DCA 2008). Additionally, a conspiracy cause of action in Florida "accrues when the plaintiff suffers damages performed pursuant to the conspiracy." *Olson v. Johnson*, 961 So. 2d 356, 360 (Fla. 2d DCA 2007).

The conspiracy cause of action was complete when Mr. Bloom was injured by his arrest on July 31, 2002. The property deprivation claims in Counts IX and X accrued when the property was seized on July 31, 2002. We reject the Blooms' argument that the torts in Counts IX and X are continuing because the property has not been returned, as return of the property is not an element of either tort. *See, e.g.*, *Mayo v. Allen*, 973 So. 2d 1257, 1258-59 (Fla. 1st DCA 2008) ("It is well settled that a conversion is an unauthorized act which deprives another of his

17

property permanently or for an indefinite time." (citations omitted)); *Coddington v. Staab*, 716 So. 2d 850, 851 (Fla. 4th DCA 1998) ("Trespass to personal property is the intentional use of, or interference with, a chattel which is in the possession of another, without justification." (citation omitted)).  Moreover, the failure to return property is a continuing *inaction*, not a series of continuing acts.  It is unclear what allegations support the intentional infliction of emotional distress claim in Count VI, but the last alleged act by any of these defendants occurred in April 2004[13] and the cause of action accrued on that date if not prior.  As the statute of limitations for each of these claims is four years, Counts VI, VII, IX, and X are time-barred.

The statute of limitations for a defamation cause of action under Florida law is two years.  Fla. Stat. § 95.11(4)(g).  While it is unclear what statements form the basis for the defamation claim in Count VIII, the Blooms allege that Waggoner insisted Mr. Bloom was a danger to animals up to July 1, 2005.[14]  The Blooms, however, have not identified any statements made by the SPCA or Everglades

---

[13]  The Blooms do allege that Waggoner protested the State Attorney's decision to abandon the criminal case on July 1, 2005.  However, such an allegation is insufficient to establish the outrageous conduct required for an emotional distress claim in Florida.  *See Valdes v. GAB Robins N. Am.*, 924 So. 2d 862, 865-66 (Fla. 3d DCA 2006) (finding false reports of crimes are not so outrageous to support an emotional distress claim).

[14]  The Third Amended Complaint does not contain factual allegations that the Everglades Outpost Defendants made defamatory statements at anytime.

18

Outpost Defendants within the two years prior to filing the Second Amended Complaint and the defamation claim is also time-barred.

### B.    Claims against Miami-Dade County

Miami-Dade County (the "County") is named in Counts III through X.  The County was named in the initial complaint but Count III, alleging a pattern or custom of wrongful police practices, was first introduced in the Third Amended Complaint.  The district court dismissed Count III as time-barred and insufficiently pleaded.  Counts IV and V were dismissed because municipalities are not liable under § 1983 on the basis of respondeat superior.  The court also dismissed the state tort claims because the County enjoyed sovereign immunity, as the Blooms failed to comply with the notice requirement of Florida's limited waiver of sovereign immunity.

### i.    Federal Claims against the County

The Blooms argue that Count III is sufficiently pleaded, but do not contest the court's determination that the claim is time-barred.[15]  Therefore, the dismissal of Count III must be affirmed.  Additionally, the court's correct determination that

---

[15] The Blooms' initial brief is silent as to the running of the statute of limitations, but their reply brief states that "[e]very claim continues to occur and extend through the County defendants' ongoing conduct." Appellants' Reply Br., 7.  It is unclear whether this sentence is reiterating the argument that the defamation claim against the County officers is not time-barred, or improperly arguing for the first time in their reply brief that Count III was not time-barred. Either way, the Blooms have failed to adequately challenge the court's determination.

19

municipalities cannot be held liable for a § 1983 violation based upon respondeat superior is uncontested. Thus, the Blooms do not adequately challenge the district court's dismissal of the federal claims against the County.

### ii.      State Tort Claims against the County

The district court properly dismissed all state tort claims against the County, as the Blooms failed to satisfy the notice requirement of Florida's limited waiver of sovereign immunity. The Blooms argue that they satisfied the statutory requirement by providing notice to all government-institution defendants prior to the expiration of the allotted three-year period.

Absent an express waiver of sovereign immunity, the Eleventh Amendment bars an action for damages against a State in federal court. *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S. Ct. 3099, 3107, 87 L. Ed. 2d 114 (1985). Florida has codified a limited waiver of sovereign immunity, requiring notice be provided to the state agency and the Department of Financial Services ("DFS") within three years after such claim accrues. Fla. Stat. § 768.28(6)(a) (2003). The Florida Supreme Court has found this notice requirement to be mandatory. *Levine v. Dade Cnty. Sch. Bd.*, 442 So. 2d 210, 213 (Fla. 1983). "Where the time for such notice has expired so that it is apparent that the plaintiff cannot fulfill the requirement, the trial court has no alternative but to dismiss the complaint with prejudice." *Id.*

20

The Third Amended Complaint contains no allegations of the mandatory notice, and the Blooms did not submit the required notice to DFS until November 15, 2010. As discussed in § III(A)(iv), *supra*, the Blooms' state claims are not continuing torts, and the Blooms failed to file the requisite notice within three years of the accrual of their claims. The County is therefore entitled to sovereign immunity, and the state tort claims must be dismissed.

## C.    Claims against Officer Peacock

Officer Peacock is named in Counts I, II, and IV through X. The district court dismissed all claims against Peacock with prejudice, finding the claims are time-barred or qualified or sovereign immunity insulates her from liability. The crux of the Blooms' argument on appeal is that the court's determination of qualified immunity was premature.

### i.    Federal Claims against Officer Peacock

The court dismissed Counts I, IV, and V against Peacock because the existence of at least arguable probable cause entitled her to qualified immunity. The Blooms argue that the court decided prematurely, as determinations of qualified immunity are best reserved for summary judgment motions – this is incorrect.

The Supreme Court has repeatedly stressed the importance of resolving

21

qualified immunity questions at the earliest possible stage in litigation. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (citation omitted). We have also held that dismissal under Rule 12(b)(6) is appropriate prior to the commencement of discovery where the plaintiff has failed to allege a violation of a clearly established law. *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (citation omitted).

To determine if an officer is entitled to qualified immunity, courts must determine (i) whether the plaintiff's allegations establish a constitutional violation, and (ii) whether the constitutional violation was clearly established. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).[16] The key to the analysis is whether a reasonable officer would know that her conduct violated the Constitution – namely whether a reasonable officer in the same circumstances could have believed that probable cause existed. *Id*. In the context of a claim of false arrest, an officer is entitled to qualified immunity where the officer had at least arguable probable cause for the arrest. *Davis v. Williams*, 451 F.3d 759, 762 (11th Cir. 2006). The existence of probable cause – and qualified immunity – is determined based on an objective standard, and bare allegations of malice are

---

[16] It is uncontested that Peacock and the other law enforcement personnel were acting in the scope of their employment and performing discretionary functions. Thus, it is the Blooms' burden to show the officers were not entitled to qualified immunity. *Cottone*, 326 F.3d at 1358.

22

insufficient to survive a motion to dismiss. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982); *see also Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

The district court recognized the difficulties in analyzing the Third Amended Complaint because the Blooms lump several constitutional violations into each count. The court identified three possible constitutional violations (the arrest, the seizure, and the prosecution), and on appeal, the Blooms have not suggested the court's approach was improper. The Blooms instead challenge the determination of qualified immunity at the dismissal stage, adding that the allegations in the complaint show that no evidence of probable cause existed.

Ignoring the conclusory allegations, the Third Amended Complaint establishes at least arguable probable cause for the issuing of the search warrant. The Blooms allege that the search warrant was invalid because it was based on material omissions and misstatements by Peacock.[17] Further, the Blooms allege

---

[17] Appellants argue that pretrial dismissal is not the proper time to litigate the validity of a search warrant. However, the Appellants will receive the procedural protection that all allegations will be taken as true and all reasonable assumptions will be made in their favor. Appellants present no case law that either the Fourth Amendment or *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978) requires a hearing before dismissing a civil complaint for failure to state a claim.

23

that Peacock relied on undocumented complaints from Florida State Troopers, reports from the Blooms' neighbors, and the report from an Ag Unit police officer (who is not alleged to be part of the conspiracy or in cahoots with Peacock or Waggoner) that animals appeared to have no water or shelter. The Blooms do not allege that Peacock fabricated these reports, only that Peacock did not verify the information received. Relying on these reports, Peacock had at least arguable probable cause to seek the search warrant. Whether Peacock had previously conspired with the co-defendants to imprison Mr. Bloom and seize his property is irrelevant in determining whether probable cause existed for the search. The warrant was founded on independent evidence that supports the existence of at least arguable probable cause. Since Peacock did not know this information to be false, she enjoys qualified immunity.

Additionally, arguable probable cause clearly existed for the arrest of Mr. Bloom and the seizure of his animals. During the execution of the search warrant, Mr. Bloom accompanied several officers, including Peacock, across the property to inspect the barn. On the way, Peacock observed several dead ducks and two peacocks in outdoor cages without food or water. The officers also observed

24

animals that looked thin and malnourished with no food or water in their cages.[18]

The Blooms focus on the presence of animal feed in an SUV on the ranch, but the

presence of feed on the premises does not destroy arguable probable cause for Mr.

Bloom's arrest. The totality of the circumstances supports a finding that at least

arguable probable cause existed for the arrest of Mr. Bloom on animal cruelty

charges. Nothing suggests that arguable probable cause did not exist for the

seizure of the animals, incident to Mr. Bloom's arrest for the mistreatment of the

subject animals. *See Lindsey*, 936 F.2d at 559 (ruling that an officer is entitled to

qualified immunity "if the facts known to him at the time of the seizure at least

arguably created a reasonable suspicion associating the property with criminal

activity." (quotation omitted)).

While the Blooms allege that Officer Peacock acted out of personal

animosity in her attempt to ruin Mr. Bloom, these bare allegations of malice do not

prevent a finding of arguable probable cause. The complaint sets forth that at least

arguable probable cause existed for the arrest, seizure and prosecution. Thus,

Peacock is entitled to qualified immunity from individual liability as to Counts I,

II, IV, and V.

---

[18] The Blooms do not contend that the officers falsified the reports of the dead animals, and observations of the officers that the animals looked malnourished were supported by the Blooms' family veterinarian, who believed several of the Blooms' animals to be underweight.

### ii.    State Claims against Officer Peacock

The district court dismissed Count VI because the Blooms failed to allege conduct so outrageous to be deemed "atrocious." Counts VII, IX, and X were dismissed because Peacock was protected by sovereign immunity. The court dismissed Count VIII as time-barred. The Blooms do not challenge the basis for the district court's dismissal of the state tort claims with respect to Peacock.[19]

### D.    Claims against Sergeant DiBernardo

DiBernardo is named in Counts I, II, and IV through X. The district court dismissed Counts I, IV, and V on the grounds that DiBernardo was protected by qualified immunity. Counts II and VIII were dismissed as time-barred, and the remaining claims were dismissed because DiBernardo enjoyed sovereign immunity. The Blooms contest the court's grant of qualified immunity and contend all claims were timely, but do not challenge the application of sovereign immunity.

### i.    Federal Claims against Sergeant DiBernardo

As with Officer Peacock, the court dismissed Counts I, IV, and V because

---

[19] Had the Blooms challenged the court's determination that Peacock was entitled to sovereign immunity, that challenge would also fail. *See* § III(D)(ii), *infra* (discussing the standard for sovereign immunity). The Third Amended Complaint alleges some additional misconduct by Peacock, but nothing sufficient to meet the bad faith/actual malice standard required to waive sovereign immunity - especially considering we have determined that at least arguable probable cause existed for the warrant, the arrest, and the seizure of the animals.

26

the existence of arguable probable cause entitled DiBernardo to qualified immunity. The allegations against DiBernardo are even less severe than the allegations against Peacock and fail to establish a clear constitutional violation.

If arguable probable cause is evident on the face of a complaint, then pre-discovery dismissal is appropriate based on qualified immunity. *See* § III(C)(i), *supra*. It is clear that at least arguable probable cause existed for DiBernardo to arrest Mr. Bloom on mistreatment of animals charges, as she was with Peacock when the dead ducks, peacocks without food and water, and thin animals were observed at the Blooms' ranch.

Additionally, the Blooms' federal claims fail to the extent they allege that DiBernardo, as Peacock's supervisor, was liable for the acts of Peacock. Section 1983 claims cannot be founded in respondeat superior, but must arise from the officer's own actions. *Keating*, 598 F.3d at 763. Dismissal of the federal claims against DiBernardo is appropriate, as qualified immunity shielded DiBernardo from individual liability for the arrest of Mr. Bloom and the seizure of his animals.

### ii. State Claims against Sergeant DiBernardo

The court dismissed the defamation claim in Count VIII because no asserted conduct occurred within the relevant time period. The Blooms argue, without citing to authority, that the defamation claim against DiBernardo should be seen as

27

part of the continuing tort behavior that underlies their claims. The Blooms' argument is not persuasive. As previously discussed in § III(A)(iv), *supra*, the Third Amended Complaint does not establish continuing state torts and each defaming comment would be a separate act. The complaint does not allege that DiBernardo made any defamatory statement within two years prior to the Blooms filing their complaint; therefore, the defamation claim is time-barred.

The remaining state law torts against DiBernardo were dismissed because the Blooms fail to allege conduct sufficient to establish the bad faith element required for personal liability under Florida's limited waiver of sovereign immunity. Florida's limited waiver of sovereign immunity requires that no officer shall be liable in any tort action for any injury or damage suffered as a result of any act in the scope of her employment "unless such officer . . . acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a) (2003). Bad faith under the statute has been equated with the actual malice standard. *Drudge v. City of Kissimmee*, 581 F. Supp. 2d 1176, 1195 (M.D. Fla. 2008) (citing *Parker v. Fla. Bd. of Regents*, 724 So. 2d 163, 167 (Fla. 1st DCA 1998)).

In a single sentence, the Blooms suggest that the court should not have determined that DiBernardo was insufficiently involved in the underlying conduct.

28

This is hardly a proper challenge to the district court's application of sovereign immunity. However, even if we viewed this single sentence as a challenge to the court's ruling, a quick review of the alleged misconduct of DiBernardo reveals that the Third Amended Complaint fails to establish bad faith.

The Blooms allege that DiBernardo demanded Mr. Bloom give his consent to remove the animals and told him that she would see him rot in jail for not cooperating. Also, DiBernardo approved Peacock's warrant with knowledge of the omissions and misstatements, and failed to inform the issuing judge that the previous cruelty charges against Mr. Bloom had been dismissed. The remaining allegations against DiBernardo are conclusory and warrant no credence from this Court. Moreover, DiBernardo is not listed as a participant in the background paragraphs explaining the alleged conspiracy between the SPCA and law enforcement, or named as one of those who protested the prosecutor dropping the criminal charges against Mr. Bloom. The few factual allegations relating to DiBernardo, taken as true, are insufficient to establish bad faith, as required to waive sovereign immunity.

### E.    Claims against the Fish & Wildlife Conservation Commission

The FWCC is named in Counts III through X. The court dismissed the federal claims against the FWCC because § 1983 cannot be used to sue a state

agency, as well as the state law claims because the Blooms failed to allege notice per Florida's limited waiver of sovereign immunity. The Blooms do not contest the dismissal of the federal claims against the FWCC and the untimeliness of the Blooms' compliance with the notice requirement, as discussed in § III(B)(ii), *supra*, applies equally to the claims against the FWCC.

### F.    Claims against Officer Reynolds

Along with Peacock and Waggoner, Officer Reynolds appears to be the main object of Mr. Bloom's frustration. Reynolds is named in Counts I, II, and IV through X.[20] The court dismissed Counts I, IV, and V because the existence of arguable probable cause entitled Reynolds to qualified immunity. The state claims were dismissed because the complaint does not establish that Reynolds acted with the requisite bad faith. The Blooms argue that the court's determination of immunity was premature. However, the briefs only address the determination of qualified immunity and do not provide any support for their argument that the sovereign immunity determination was premature.

### i.    Federal Claims against Officer Reynolds

The standard for qualified immunity of a state officer is addressed in

---

[20] The Blooms do not indicate in what capacity Reynolds is being sued – either official or individual. However, the claims against Reynolds in his official capacity are claims against his office (the FWCC) and were properly dismissed for the reasons discussed in § III(E), *supra*.

30

§ III(C)(i), *supra*, and applies equally to the claims against Reynolds. The Blooms do not identify a single allegation in the complaint that destroys arguable probable cause or suggests a constitutional right was clearly violated. The Blooms misinterpret *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) to suggest that determinations of qualified immunity are only appropriate at the summary judgment stage. In actuality, *Pearson* explicitly states "we have made clear that the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials [will] be resolved *prior to discovery*." *Id.* at 231, 808 S. Ct. at 815 (emphasis added) (citation omitted).

A complete review of the complaint reveals that there are no factual allegations that Reynolds fabricated any evidence or played more than a minor role in the alleged violations. The Blooms allege, and we take as true, that Peacock was the lead investigator, she drafted the affidavit for search warrant with the assistance of Waggoner, the affidavit was the sole support for the warrant, and Peacock arrested Mr. Bloom in consultation with and at the direction of Waggoner – not Reynolds. Also, Peacock and Waggoner – but not Reynolds – protested the State Attorney's abandonment of the prosecution of Mr. Bloom on animal cruelty charges.

31

The limited factual allegations against Reynolds are that he laughed when Mr. Bloom screamed in pain while being handcuffed, Reynolds failed to notify the issuing judge that the animal cruelty charges in the affidavit for search warrant did not result in convictions,[21] and he assisted in the execution of the search warrant and in loading some of the seized animals.[22]  These factual allegations do not establish that Reynolds violated Mr. Bloom's constitutionally protected rights.  As Reynolds was acting within the scope of his employment, the Blooms have failed to meet their burden to sufficiently plead that Reynolds was not insulated from personal liability by qualified immunity.

### ii.    State Claims against Officer Reynolds

As with the state tort claims against DiBernardo, discussed in § III(D)(ii), *supra*, the Blooms have failed to allege bad faith or actual malice on the part of Reynolds.  The well-pleaded allegations against Reynolds fail to establish that he acted with the requisite bad faith to state a cause of action.

---

[21]  It is worth noting that it is not alleged that Reynolds had an opportunity to inform the issuing judge of such omission, or that Reynolds reviewed the affidavit before it was submitted to the judge or before the execution of the warrant.

[22]  The complaint contains several allegations relating to Reynolds that lack factual support and we do not give credence to, such as, he colluded with Waggoner and Peacock to fabricate reasons to enter the Bloom property, engaged in a scandalously corrupt agreement to seize animals from citizens, fanned adverse publicity leading to the high bond set for Mr. Bloom, and intentionally and purposely designed a plan, along with Peacock and Waggoner, to wrongfully arrest Mr. Bloom's daughter.

32

### G.    Mrs. Bloom's Federal Claims (Count II)

Mrs. Bloom was added as a party and her separate § 1983 claim (Count II) was introduced in the Second Amended Complaint, filed on May 9, 2009.  The district court specifically dismissed Count II as time-barred.  The court rejected Mrs. Bloom's argument that her claim related back to her husband's initial pleading, as she was barely mentioned in the initial complaint.  On appeal, Mrs. Bloom argues that she was identified in the initial complaint and the Bloom residence is identified in the first amended complaint.  Additionally, she argues that her claim arises from the same conduct as described in the initial complaint and the defendants suffered no prejudice with her addition as a plaintiff.

As previously discussed, whether an amendment relates back to a prior pleading is determined by Rule 15(c).[23]  Rule 15(c) does not specifically address relation back of an amendment that adds a party-plaintiff, but we require such a party to satisfy the requirements of Rule 15(c)(1)(C) to relate back to a prior pleading.  *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1259 (11th Cir. 2008).  The critical issue is whether the original complaint gave notice to the defendant of the claim now being asserted.  *Id.* at 1260.  Limits to relation back are

---

[23]  Federal Rule of Civil Procedure 15(c) and the standard of review are set forth in § III(A)(i), *supra*.

33

designed to protect defendants from prejudice not just from lost and destroyed evidence, but from an unexpected increase in liability and an inherently more complex defensive strategy long after the statute of limitations had run. *Nelson v. Cnty. of Allegheny*, 60 F.3d 1010, 1015 (3rd Cir. 1995) (quoting *Leachman v. Beech Aircraft Corp.*, 694 F.2d 1301, 1309 (D.C. Cir. 1982)).

The initial complaint failed to give notice to the defendants that Mrs. Bloom would assert a separate claim of infringement of her constitutionally protected rights. Mrs. Bloom was not present when Mr. Bloom was arrested and the animals were seized. Mrs. Bloom, herself, was neither prosecuted nor arrested for any criminal misconduct. The initial complaint repeatedly refers to Mr. Bloom's property, without reference to any ownership interest possessed by Mrs. Bloom. Moreover, the sole reference of Mrs. Bloom in the initial complaint is that due to the high bond imposed by the criminal court, "Andrew Bloom had to borrow funds to pay his attorney and make bail and to just be able for he and *his wife* to live on."

There is nothing to indicate that the defendants named in Count II had notice that Mrs. Bloom could or would bring claims alleging her constitutional rights were violated.[24] Mrs. Bloom's claim would clearly increase the defendants'

---

[24] The Blooms argue that the County had knowledge of the relevant facts and the County would not be prejudiced by the additional claim. However, Miami-Dade County is not named as a defendant in Count II. Count II is only brought against the individual defendants and the

34

potential liability and complicate their defense strategy.  The district court did not abuse its discretion when it refused to relate Mrs. Bloom's claims back to a prior pleading. Thus, to the extent Mrs. Bloom's claims do not fail for the previously stated reasons, her claim does not relate back to the initial complaint and is time-barred.

## IV.    Conclusion

The district court properly dismissed all claims in the Third Amended Complaint.  However, the Blooms contend that even if the dismissal is proper, they should be granted leave to amend.  In response to the defendants' motions to dismiss, the Blooms had also alternatively requested the court provide an opportunity to amend and cure deficiencies.

A court should give a plaintiff an opportunity to amend a complaint rather than dismiss it when "it appears that a more carefully drafted complaint might state a claim upon which relief could be granted." *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985).  After a district court grants an opportunity to amend and identifies the pleading's deficiencies, if the plaintiff fails to submit a proper pleading, dismissal with prejudice is appropriate.  *See, e.g.*, *Welch v. Laney*, 57 F.3d 1004, 1009 (11th Cir. 1995) (affirming dismissal of a portion of the

---

corporate defendants.

35

complaint with prejudice after the district court gave the plaintiff two opportunities to amend her complaint, but the plaintiff failed to properly plead a § 1983 claim).

In the present case, the majority of claims could not be rectified by more careful drafting and were properly dismissed with prejudice, including i) Counts VI through X against the County, FWCC, and the law enforcement officers in their official capacity, for failing to timely provide the requisite statutory notice; ii) all claims against the SPCA and Everglades Outpost Defendants, Counts II and VIII against all defendants, and Count III against the County, as time-barred; iii) Counts III through V against the FWCC and Counts I, II, IV, and V against Reynolds in his official capacity, because § 1983 cannot be used to sue a state agency; and iv) Counts IV and V against the County and Counts I, II, IV, and V against DiBernardo in her official capacity because the claims are inappropriately based on the theory of supervisory liability. The only claims that could be rectified by amendment are Counts I, IV through VII, IX, and X, against Peacock, DiBernardo, and Reynolds, in their individual capacities, but the Blooms had ample opportunity to state these claims prior to the dismissal with prejudice.

The district court patiently permitted Mr. Bloom to submit three *pro se* complaints, and an additional two complaints with Mrs. Bloom after they obtained

36

counsel.  In the order dismissing the Second Amended Complaint, the court clearly identified deficiencies and informed the Blooms that they would only have one final chance to cure those deficiencies.  The Blooms failed to cure, and the district court dismissed the claims with prejudice in September 2011 – nearly ten years after Mr. Bloom was arrested and more than five years after his initial complaints were filed.  After five years, five insufficiently pleaded complaints, and a direct warning from the bench, the district court did not err in dismissing all claims with prejudice.  Accordingly, the district court's dismissal of the Blooms' Third Amended Complaint with prejudice is AFFIRMED.