[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 07-13978
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 02, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00020-CV-BAE-4

CHARLES A. SHARP
JUDY K. SHARP, as personal representatives of
the Estate of Katie R. Sharp and as Legal
Guardians of Devin K. Sharp, surviving child
of Katie R. Sharp,

Plaintiffs-Appellants,

versus

WILLIAM SCOTT FISHER,
Georgia State Patrol, in his official
and individual capacities,
BRYAN H. STRICKLAND,
Georgia State Patrol, in his official
and individual capacities,
JOHN DOE 1, Georgia State
Patrol, in his official and
individual capacities, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

**(July 2, 2008)**

Before EDMONDSON, Chief Judge, PRYOR, Circuit Judge, and JOHNSON,[*]
District Judge.

PER CURIAM:

Charles and Judy Sharp, brought action pursuant to 42 U.S.C. § 1983

against Appellees Strickland, Ellis and Fisher, Georgia police officers, in their

individual capacities, on behalf of their deceased daughter, Katie Sharp, and her

minor child.  The Sharps appeal from the district court's entry of summary

judgment in favor of Appellees Strickland and Ellis on the ground that they were

not subject to supervisory liability, and in favor of Appellee Fisher on the ground

that even though his conduct was "objectively unreasonable," he was nevertheless

entitled to qualified immunity because the law was not "clearly established."

## I. BACKGROUND

On August 17, 2004, 21-year old Katie Sharp was driving her father's SUV

southbound on Interstate 95 in Colleton County, South Carolina.  She was

_____

[*]Honorable Inge P. Johnson, United States District Judge for the Northern District of Alabama, sitting by designation.

purportedly clocked speeding by Colleton County Sheriff's deputies. When the deputies attempted to pull her over for speeding, Sharp did not stop, so the deputies gave chase. The pursuit continued towards Georgia. Before the chase crossed into Georgia, a South Carolina officer contacted the dispatcher for the Georgia State Patrol and notified the dispatcher of the pursuit in progress headed toward Georgia. Appellees Fisher and Strickland responded on behalf of the Georgia State Patrol. Other Georgia law enforcement officers were likewise notified and participated in the chase. Additionally, the Colleton County, South Carolina officers were permitted to continue their pursuit into Georgia, but had been directed to allow Georgia officers to take the lead. When Fisher and Strickland reached Interstate 95 they entered Interstate 95 going north. When they observed the pursuit going south they crossed the median at the nearest cut-through and joined the pursuit southbound. After speeding south through traffic for approximately 20 miles Fisher and Strickland reached the pursuit near Exit 94 on Interstate 95 where the road is three lanes wide. Fisher and Strickland were in separate vehicles. Within 53 seconds after Fisher reached the pursuit he personally observed the Sharp vehicle move in and out of lanes, followed by other law enforcement officers and passing a semi-tractor truck and two smaller vans/trucks. At that point Fisher stopped the Sharp vehicle with the Precision

3

Immobilization Technique ("PIT") by making contact with the back-right portion of the Sharp vehicle. Sharp's vehicle spun 180 degrees and slid across all lanes of traffic into a tree-filled ditch. Sharp and her passenger both died.

At the point in time Fisher attempted the PIT maneuver, Fisher knew: 1) Sharp was fleeing from law enforcement officers; 2) Sharp was traveling at a high rate of speed; 3) the high speed chase had covered at least 20 miles; 4) Fisher personally observed a number of law enforcement officers involved in the pursuit; 5) Fisher's pursuit was initiated by request from another state; 6) the high speed chase had crossed state lines; 7) numerous law enforcement officers from multiple jurisdictions were involved in the pursuit; 8) Sharp had failed to respond to law enforcement vehicles with emergency lights and sirens activated and gave no indication of slowing down or stopping the pursuit; 9) there were numerous civilian vehicles on Interstate 95 during the pursuit; and 10) albeit for only a short period of time, Fisher personally observed the Sharp vehicle driving erratically.

Prior to attempting the PIT maneuver Fisher notified Strickland that he intended to execute it on the Sharp vehicle. Strickland answered Fisher that he would work the radio and Fisher should "worry about driving." Fisher had received training on performing the PIT maneuver prior to this occasion. Appellee

Ellis is Appellee Fisher's supervisor and has never administered discipline to any Georgia State Patrol officer relating to the use of the PIT maneuver during his tenure as head of the Georgia State Patrol.

On appeal the Sharps assert that the district court correctly held that Fisher's conduct was "objectively unreasonable," but erred in concluding that the law was not sufficiently clear on August 17, 2004, to give Fisher, as a reasonable law enforcement officer, "fair warning" that his conduct under the facts and circumstances violated Katie Sharp's constitutional rights and thus concluding that Fisher's conduct did not violate Katie Sharp's Fourth Amendment rights. With respect to appellants' claims against Strickland and Ellis, they assert that the district court failed to consider binding authority establishing the parameters for supervisory liability under 42 U.S.C. § 1983, and erred in concluding that Strickland and Ellis could not be found liable based on the causal connection between these supervisors' conduct and that of Fisher.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion. Chambless v. Louisiana-Pacific Corp., 481 F.3d 1345, 1349 (11th Cir. 2007). When reviewing a grant of summary judgment, the court of appeals may affirm if

there exists any adequate grounds for doing so, regardless of whether it is the one on which the district court relied.  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1117 (11th Cir. 1993) (citations omitted).

### III. DISCUSSION

The district court properly found that Fisher was entitled to qualified immunity.  Qualified immunity protects government officials performing discretionary functions as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Beshers v. Harrison, 495 F.3d 1260, 1265 (11th Cir.2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).  The qualified immunity defense requires the court to first  resolve the threshold question of whether the facts, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). Only if it finds a violation of a constitutional right does the court take the next, sequential step of determining whether the right was clearly established in light of the specific context of this case.  Id.; Scott v. Harris, – U.S. – , 127 S. Ct. 1769, 1774, 167 L.Ed.2d 686 (2007).   Therefore, this court first examines whether Fisher's actions violated the Fourth Amendment.

6

The Fourth Amendment provides the right to be free from excessive force in the course of an investigatory stop or other seizure of the person. Beshers, 495 F.3d at 1265 (citing Kesinger ex. rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir.2004)). Terminating a car chase by striking a fleeing vehicle constitutes a "seizure." Brower v. County of Inyo, 489 U.S. 593, 597, 109 S. Ct. 1378, 1381, 103 L.Ed.2d 628 (1989). Whether effecting a seizure violates the Constitution turns on the question of whether striking the vehicle was "objectively reasonable." Scott, 127 S. Ct. at 1776. In determining whether Fisher's actions were "objectively reasonable," the court must consider the risk of bodily harm Fisher's action in attempting the PIT maneuver posed to Katie Sharp in light of the threat to the public that Fisher was trying to eliminate, from the perspective of a "reasonable officer on the scene, rather than with 20/20 vision of hindsight." Graham v. Conner, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). From what Fisher knew at the time, Katie Sharp posed an actual and imminent threat to the public. The Supreme Court stated in Scott:

> So how does a court go about weighing the perhaps lesser probability of injuring or killing numerous bystanders against the perhaps larger probability of injuring or killing a single person? We think it appropriate in this process to take into account not only the number of lives at risk, but also their relative culpability. It was respondent, after all, who intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high-speed flight that ultimately produced the choice between two evils that [the officer] confronted.

> Multiple police cars, with blue lights flashing and sirens blaring, had been chasing respondent for nearly 10 miles, but he ignored their warning to stop. By contrast, those who might have been harmed had [the officer] not taken the action he did were entirely innocent. We have little difficulty in concluding it was reasonable for [the officer] to take the action he did.

Scott, 127 S. Ct. at 1778.

Applying Scott to the facts of this case, we conclude that Fisher's conduct in attempting the PIT maneuver to the Sharp vehicle was reasonable. When Fisher acted, he knew Sharp was fleeing from law enforcement officials, she was traveling at a high rate of speed, law enforcement officials had chased her at least 20 miles, the high speed chase had crossed state lines, numerous law enforcement officials from multiple jurisdictions had been involved in the chase, she had failed to respond to blue lights and sirens and had given no indication of stopping the pursuit or slowing down, there were several civilian vehicles on the Interstate during the pursuit, and she was driving erratically. It was Katie Sharp who intentionally placed herself, her passenger, and the public in danger by engaging in the high speed chase and fleeing from the officers which ultimately produced the choice between two evils that Fisher confronted.[1]

---

[1]As the Supreme Court observed in Scott, while another option was to end the chase of Katie Sharp, the Court was "loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive *so recklessly* that they put other people's lives in danger. It is obvious the perverse incentives such a rule would create...." Scott, 127 S. Ct. at 1779 (emphasis in original).

We conclude that the car chase Katie Sharp initiated posed a substantial and immediate risk of serious physical injury to others; no reasonable jury could conclude otherwise. Fisher's attempt to terminate the chase through the use of the PIT maneuver was objectively reasonable. Therefore, no Fourth Amendment violation occurred, and Fisher is entitled to summary judgment.

Because we conclude that Fisher's actions were objectively reasonable under the facts of this case, and hence no Constitutional violation occurred, we need not address the supervisory liability of appellees Strickland and Ellis. See, e.g, Beshers, 495 F.3d at 1264 n.7.

For the foregoing reasons, the ruling of the district court, granting summary judgment in favor of all the appellees, is

**AFFIRMED**.