[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14171
Non-Argument Calendar
_____

D.C. Docket No. 6:12-cv-01712-PGB-GJK


JERRY MURPHY,

Plaintiff-Appellant,

versus

JERRY L. DEMINGS,
in his official capacity as Orange County Sheriff,
a.k.a. Orange County Sheriff's Office,
MARCEL FERNANDO CARON,
individually,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 11, 2015)

Before MARCUS, JULIE CARNES, and EDMONDSON, Circuit Judges.

PER CURIAM:

Plaintiff Jerry Murphy, a state prisoner[1] proceeding pro se on appeal, appeals the district court's order granting summary judgment in favor of Defendant Deputy Caron in Plaintiff's 42 U.S.C. § 1983 civil action.  This action is about alleged excessive force in violation of the Fourth Amendment.[2]  No reversible error has been shown; we affirm.

This case arises out of attempts by police to detain Plaintiff, whom police suspected was involved in an armed robbery.  Viewed in the light most favorable to Plaintiff, these facts are pertinent.  At about midnight on 21 November 2008, an armed robbery was committed at a 7-Eleven store.  Shortly thereafter, police located a car matching the description of the car used in the robbery at a nearby home and began surveillance on the car.  About one hour after the robbery, police followed the car from the home to a different 7-Eleven store.

The driver of the car -- identified later as Plaintiff -- began pumping gas and sat inside the car while the tank filled.  In an attempt to prevent Plaintiff from driving away, two unmarked police cars parked directly in front of and directly

---

[1] Plaintiff is incarcerated on charges unrelated to this case.

[2] Plaintiff has failed to challenge the district court's grant of summary judgment in favor of Defendant Sheriff Demings, in his official capacity.  As a result, Plaintiff has abandoned his excessive force claim against Sheriff Demings.  See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008).

2

behind Plaintiff's car.  As observed by the district court, surveillance footage shows that at least one of the unmarked police cars had its blue lights on at the time.[3]  Then, Plaintiff put his car in reverse, hitting the police car behind him. Plaintiff then drove forward, hitting the police car in front of him, before he pulled away from the gas pump and turned out of the parking lot.

The district court found -- based on the surveillance footage -- that at least one of the police cars' sirens was activated seconds after Plaintiff maneuvered out from between the two police cars.  After pulling out of the store parking lot, Plaintiff drove down the road -- with four unmarked police cars in pursuit. According to Plaintiff, he drove about 55 m.p.h. in a 35 to 40 m.p.h. zone.  The record (including Plaintiff's deposition testimony) also demonstrates that at least one other civilian car was driving on the road in advance of Plaintiff during the pursuit.

Defendant Deputy Caron (who had not been present at the 7-Eleven parking lot) responded to a call over the police radio requesting help stopping an armed-robbery suspect who had hit two police cars.  As Deputy Caron approached the area, he saw a car matching the description of the car used in the robbery; and he

---

[3] Plaintiff contends that neither police car had its lights activated when the officers attempted to block Plaintiff's car.  Because Plaintiff's version of the facts is "blatantly contradicted" by video evidence (the accuracy of which is unchallenged), we do not adopt Plaintiff's version of this fact as true.  See Scott v. Harris, 127 S.Ct. 1769, 1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

saw that the car was driving at a high speed and with no headlights on. Deputy Caron also saw at least one civilian car in the immediate area ahead of Plaintiff. In an effort to stop Plaintiff, Deputy Caron used his police truck to ram Plaintiff's car. After being rammed two times, Plaintiff's car spun out of control and came to a stop.

Plaintiff got out of the car and began immediately running away. Deputy Caron and another officer chased Plaintiff. Deputy Caron then saw Plaintiff make an "aggressive movement towards his waistband,"[4] and believed that Plaintiff was reaching for a gun. At that point, Deputy Caron fired ten to twelve shots at Plaintiff. Plaintiff was shot two times and fell into some bushes. Plaintiff was then apprehended and taken to a hospital for medical treatment.

Plaintiff filed this civil action against Deputy Caron individually, alleging that Deputy Caron used excessive force (in violation of the Fourth Amendment) when he rammed Plaintiff's car and when he shot Plaintiff. The district court granted Deputy Caron's motion for summary judgment: a motion based on an assertion of qualified immunity. Based on the record, the district court determined that Deputy Caron acted objectively reasonably and, thus, committed no Fourth Amendment violation.

---

[4] This characterization of Plaintiff's movement is taken from Deputy Caron's deposition testimony. Plaintiff makes no attempt to rebut Deputy Caron's description.

We review de novo a district court's grant of summary judgment, viewing the evidence and all reasonable factual inferences in the light most favorable to the nonmoving party.  Skop v. City of Atlanta, 485 F.3d 1130, 1136 (11th Cir. 2007).  We construe liberally pro se pleadings.  Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002).  To avoid summary judgment based on qualified immunity, Plaintiff must show both that Deputy Caron violated a federal right and that the right was already clearly established when Deputy Caron acted.  See id.

A federal right is "clearly established" when "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2083 (quotations and alterations omitted).  "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate," in the circumstances.  Id.; Lane v. Franks, 134 S.Ct. 2369, 2383 (2014); Pace v. Capobianco, 283 F.3d 1275, 1282 (11th Cir. 2002) (existing precedent "must give real notice of practical value to government officials, considering the

5

specific circumstances confronting them, and not just talk of some generalized, abstract intellectual concept.").

"Although suspects have a right to be free from force that is excessive, they are not protected against a use of force that is necessary in the situation at hand." Jean-Baptiste v. Gutierrez, 627 F.3d 816, 821 (11th Cir. 2010) (quotations omitted). No precise test or "rigid preconditions" exist for determining when an officer's use of deadly force is excessive. See Scott v. Harris, 127 S.Ct. 1769, 1777 (2007). Instead, in deciding the merits of a claim of excessive force, we must determine whether -- given all the facts and circumstances of a particular case -- the force used was "reasonable" under the Fourth Amendment. Graham v. Connor, 109 S.Ct. 1865, 1871-72 (1989).

"In determining the reasonableness of the force applied, we look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." McCullough v. Antolini, 559 F.3d 1201, 1206 (11th Cir. 2009). We consider, among other things, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 109 S.Ct. at 1872. In such a fact-sensitive question, predicting the outcome of any particular

6

case often becomes difficult because so many details must be weighed in the balance.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. And we must allow "for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Id. "We are loath to second-guess the decisions made by police officers in the field." Vaughan v. Cox, 343 F.3d 1323, 1331 (11th Cir. 2003).

The evidence, viewed in the light most favorable to Plaintiff, shows that Deputy Caron acted objectively reasonably when he used his police truck to disable Plaintiff's car. Deputy Caron knew that Plaintiff was a suspect in an armed robbery that had occurred less than two hours before. In an attempt to evade capture, Plaintiff initiated a high-speed chase, hitting two police cars, and failed to otherwise respond to blue lights and sirens. When Deputy Caron first saw Plaintiff, Plaintiff was driving at a high speed, without his headlights on, on a road with at least one other civilian car nearby.

Given the totality of the circumstances, an objective officer in Deputy Caron's situation could have believed reasonably that Plaintiff posed a threat of serious physical injury to pedestrians, other civilian motorists, and to the officers

7

themselves.  Deputy Caron's decision to eliminate the threat of danger to bystanders and officers by disabling Plaintiff's car was objectively reasonable under the Fourth Amendment.  See Scott, 127 S.Ct. at 1778 (an officer acted objectively reasonably in striking a suspect's car after the suspect engaged in a high-speed chase with multiple police cars, evaded police attempts to block his car, hit a police car, and drove recklessly); Sharp v. Fisher, 532 F.3d 1180, 1184 (11th Cir. 2008) (no Fourth Amendment violation occurred when an officer struck a suspect's car while the suspect was engaged in a high-speed chase, was being pursued by multiple officers, was driving erratically, and was in an area with several other civilian motorists).  Plaintiff has failed to demonstrate either the existence of a constitutional violation or that Deputy Caron violated a clearly established constitutional right of which a reasonable person would have known, given the circumstances.

We also conclude that, under the circumstances, Deputy Caron's act of shooting Plaintiff was not outside the range of reasonable conduct.  Deputy Caron was confronted with an armed robbery suspect who was fleeing police, and who had already hit two police cars without stopping and had engaged in a high-speed chase.  When Plaintiff made a sudden movement toward his waistband, an objective officer in Deputy Caron's situation could have believed reasonably that Plaintiff was reaching for a gun and that Plaintiff posed an imminent threat of

8

serious physical injury to the officers and to others.  Faced with a "tense, uncertain, and rapidly evolving" situation, Deputy Caron made a split-second decision to fire his gun in an attempt to disarm or incapacitate Plaintiff.  Given the circumstances, we cannot say that Deputy Caron's decision was unreasonable in the Fourth Amendment sense.

Although Plaintiff was running away from Deputy Caron when he was shot and had not threatened definitely the officers with a gun, "the law does not require officers in tense and dangerous situations to wait until the moment a suspect uses a deadly weapon to act to stop the suspect."  See Long v. Slaton, 508 F.3d 576, 581 (11th Cir. 2007).

We also reject Plaintiff's contention that Deputy Caron acted unreasonably by failing to warn Plaintiff about the potential use of deadly force.  Although a warning is one factor that weighs in favor of reasonableness, Tenn. v. Garner, 105 S.Ct. 1694, 1701 (1985), the Supreme Court has stressed that "Garner did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force.'"  See Scott, 127 S.Ct. at 1777.  Instead, reasonableness is determined based on all the facts and circumstances of each individual case.  Graham, 109 S.Ct. at 1872.

Under the facts and circumstances of this case, Deputy Caron's use of deadly force was not outside the range of reasonable conduct under the Fourth

9

Amendment.  An objectively reasonable officer possessing the same knowledge as Deputy Caron could have believed that the use of deadly force against Plaintiff was justified, to prevent serious injury to the officers and to bystanders.  And we are highly confident that Deputy Caron -- given the circumstances -- violated no clearly-established constitutional right of which a reasonable person would have known.  As a matter of law, Deputy Caron is entitled to summary judgment.

AFFIRMED.