[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-12305
Non-Argument Calendar
_____

D.C. Docket No.1:19-cv-01846-TWT

CLINT ROBERTS,

Plaintiff-Appellee,

versus

MATTHEW J. KAHL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 3, 2021)

Before MARTIN, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

While investigating the potential theft of a grill, Officer Matthew Kahl detained Clint Roberts in his front yard and hit him in the face with the body of a taser. Roberts sued Officer Kahl for false arrest and excessive force. The district

court denied Officer Kahl qualified immunity, and Officer Kahl appealed to us. After careful review, we affirm.

## I.

The story of this case begins with a gift—Roberts's neighborhood friend invited him to come by his house and take his old grill. So, one evening, Roberts drove his red Chevy Silverado to his friend's house and loaded the grill on his trailer. He then drove home to a cul-de-sac down the street, parked in his side yard, left the grill on the trailer, and went inside his house to care for his children and call his brother.

As Roberts was leaving his friend's house with the grill, a neighbor saw him. The neighbor did not know he had permission to take the grill and called the police. Officer Kahl responded to the call and checked the friend's house. All the doors and windows were secure. He then drove to the cul-de-sac and approached the red Chevy Silverado on foot. Because it was dark, he looked inside with his flashlight.

Meanwhile, Roberts was on the phone with his brother when he noticed a light in his yard. He thought that it might be a thief. Roberts cracked his front door and yelled at the apparent thief to get out of his yard. Officer Kahl yelled back at him to come outside. Roberts, still unaware who was in his yard, refused. Officer Kahl ran up the driveway, yelling "get your f***ing hands up motherf*****, get your f***ing hands up" and "put your f***ing hands up, motherf*****, I'll f***ing kill you."

Officer Kahl later explained that he was on edge that night, having recently quit smokeless tobacco.

When Roberts realized that the person in his yard was a police officer, he complied with Officer Kahl's instructions. Wearing only his underwear and holding only his phone, Roberts walked out of his house and laid face down in the yard. Roberts's brother listened on the phone until Officer Kahl ended the call and handcuffed Roberts. While on the ground, Roberts tried to explain that he owned the home, but Officer Kahl continued yelling at him and never explained why Roberts was being detained. Officer Kahl eventually hit Roberts with the body of his taser, giving him a black eye. When backup arrived, Officer Kahl dragged Roberts down the driveway and put him in the back of a patrol car.

Roberts's brother, whose phone call had been abruptly disconnected, called 911 and drove to Roberts's house. He entered the house to check on the children and get Roberts's driver's license. He spoke with another officer on the scene, and that officer released Roberts. Evidence suggests that Roberts was in custody from 15 to 40 minutes.

Roberts sued Officer Kahl, and after discovery, Officer Kahl moved for summary judgment on Roberts's Fourth Amendment claims, arguing that he was entitled to qualified immunity. The district court denied the motion as to the federal claims. Officer Kahl appealed.

3

## II.

We review *de novo* a district court's grant of summary judgment. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in the State of Ala.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In making this determination, we review the record, drawing all reasonable inferences in the light most favorable to the nonmoving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999).

Officer Kahl erroneously argues that the district court should not have reviewed the entire record—especially Roberts's deposition—because Roberts did not file a statement of disputed facts as required by a local rule. It follows, he suggests, that we should not consider the entire record either. We disagree. We give "great deference to a district court's interpretation of its local rules." *Clark v. Hous. Auth. of City of Alma*, 971 F.2d 723, 727 (11th Cir.1992). And we have held that a district court has "broad discretion" to "overlook[]" a party's "noncompliance" with this specific kind of local rule. *Reese v. Herbert*, 527 F.3d 1253, 1270 (11th Cir.

4

2008). The district court did not abuse its discretion by evaluating all the record evidence in making its summary judgment ruling.

## III.

"The defense of qualified immunity shields government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person should have known." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (internal quotation marks omitted) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003)). If that government official was acting within the scope of his discretionary authority, then the burden is on the plaintiff to establish that (1) the defendant's allegedly wrongful conduct violated a constitutional right and (2) the right at issue was clearly established at the time of the alleged misconduct. *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Officer Kahl argues that the district court erred in denying him qualified immunity on the arrest claim because (1) it relied on the length of the investigation, despite Officer Kahl not having conducted the investigation and (2) Roberts's detention was not an arrest that required probable cause. Officer Kahl argues that the district court erred in denying qualified immunity on the excessive force claim

because Officer Kahl's use of force was *de minimis*. We address these arguments in turn.

A.

Officer Kahl argues that he cannot be held responsible for Roberts's detention because he turned Roberts over to another officer. A police officer may detain an individual for investigation if "under the totality of the circumstances . . . [the officer] had an objectively reasonable suspicion that [the individual] had engaged, or was about to engage, in a crime[.]" *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)) (citations omitted). But when the scope and duration of an investigatory stop exceeds the purposes that justify the stop, it becomes an arrest and must be supported by probable cause. *Id.*

Neither party contends that Officer Kahl lacked an objectively reasonable suspicion to detain Roberts for questioning, nor do they contend that Officer Kahl had probable cause to arrest Roberts. They also agree that Officer Kahl handed Roberts over to another officer who eventually released him. So, the sole question is whether the investigatory stop developed into an arrest before Officer Kahl transferred Roberts to another officer. We analyze four factors to distinguish between an investigatory stop and an arrest: "[1] the law enforcement purposes served by the detention, [2] the diligence with which the police pursue the investigation, [3] the scope and intrusiveness of the detention, and [4] the duration

6

of the detention." *Acosta*, 363 F.3d at 1146 (quoting *United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000)). The district court determined that these factors indicated that Officer Kahl arrested Roberts. Construing the evidence in the light most favorable to Roberts, we agree.

Officer Kahl argues that the district court did not sufficiently analyze his lawful purpose in detaining Roberts; namely, to investigate a potential non-violent theft of a grill. Officer Kahl, no doubt, had a legitimate purpose in approaching Roberts's house. But the undisputed facts show that Officer Kahl saw a man come out of his house carrying what was immediately identifiable as a phone. Roberts complied with Officer Kahl's instructions, but Officer Kahl never asked him any investigatory questions about the grill or anything else. There is no evidence that Roberts posed a threat or that he was a flight risk; he was unarmed, in his underwear, outside his own house. Nonetheless, Officer Kahl handcuffed Roberts and, eventually, put him in the back of a patrol car. Under these circumstances, Officer Kahl's conduct was not proportional to his investigatory purpose.

Officer Kahl also challenges the district court's analysis of the duration factor because Roberts's detention was relatively short. But this argument misses the point. We have held that "no rigid time limitation or bright line rule [exists] regarding the permissible duration" of an investigatory stop. *Id.* at 1147. Instead, no matter the timing, the duration of the detention must be "reasonable in relation to the purpose

of the stop." *Id.* The district court noted that Officer Kahl could not identify any investigatory purpose that would justify handcuffing Roberts and detaining him in a patrol car. The district court also reasoned that "even if the duration of the detention is not unreasonable when viewed in isolation, application of the other three factors persuades the [c]ourt that [Officer Kahl's] investigatory stop matured into an arrest." We agree with the district court. Under these circumstances, an arrest occurred.

## B.

With respect to the excessive force claim, Officer Kahl argues that his use of force was *de minimis* because he only gave Roberts a black eye. "The Fourth Amendment provides the right to be free from excessive force in the course of an investigatory stop." *Sharp v. Fisher*, 532 F.3d 1180, 1183 (11th Cir. 2008). Any use of force must be "reasonably proportionate to the need for that force." *Galvez v. Bruce*, 552 F.3d 1238, 1243 (11th Cir. 2008) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002)). A court weighs the nature of the constitutional intrusion against the government's interests and pays "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). If the use of force is only *de minimis*, it cannot be considered excessive. *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir.

8

2000). "[O]bjectively unreasonable force does not become reasonable simply because the fortuity of the circumstances protected the plaintiff from suffering more severe physical harm." *Lee*, 284 F.3d at 1200.

We agree with the district court that Officer Kahl's use of force was unreasonable. Although Officer Kahl's actions did not result in severe physical harm, they were not proportional to the situation. The severity of injury may be evidence of how much force was used, but we must evaluate the justification for the use of force, not the result of that force. When Officer Kahl hit Roberts with the body of his taser, Roberts was already on the ground and complying with his verbal commands. No force was justified, so any force was excessive.

## IV.

For the reasons stated above, the district court's denial of summary judgment is AFFIRMED.

9